## A96A0579. STRICKLAND v. THE STATE.
(471 SE2d 576)

BEASLEY, Chief Judge.

Strickland appeals from his conviction on charges of felony obstruction of a law enforcement officer (OCGA § 16-10-24 (b)) and misdemeanor obstruction of an emergency medical technician ("EMT") (OCGA § 16-10-24.2 (b)).

1. The first question is whether the evidence was insufficient to support the convictions under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The evidence is viewed with all reasonable inferences made, and all issues of weight and credibility resolved, in favor of the verdict. *Jackson v. Virginia*, supra; *Patterson v. State*, 181 Ga. App. 68, 69 (2) (351 SE2d 503) (1986).

---

The county emergency services dispatcher received a call from a woman at Strickland's residence who stated a child had ingested poison. Two uniformed EMTs responded in a marked ambulance. Strickland was in the driveway when they arrived and they parked on the street. Strickland was hostile and told them the child was not there, but he also stated the child had been taken to the hospital, examined, and returned. The EMTs had arrived at Strickland's house five to ten minutes after receiving the call; it would have taken longer than that to leave Strickland's house, travel to the nearest hospital, and return.

The EMTs asked to see the child but Strickland told them to leave and threatened them with bodily harm. Several people appeared on the porch, including a nervous woman holding a crying child. Although Strickland stated the child needed no attention, at no time did he claim to be the child's parent or guardian. Both EMTs testified they did not enter Strickland's yard or driveway and that their duties required them to assess the medical situation of those for whom emergency calls are made.

Because of Strickland's threats, the EMTs called for assistance from the sheriff's office, and Deputy McCarty arrived shortly. After speaking with the EMTs he walked up the driveway and attempted to speak with Strickland about the situation. Strickland continued to threaten the EMTs and then threatened McCarty, stating he would go into his house, get a gun, and kill McCarty. McCarty had been to the house before and knew there were weapons inside. He positioned himself between Strickland and the house, so when Strickland attempted to go towards the house directly through McCarty, McCarty stopped him. As Strickland was being subdued, he told his son, who had come down from the porch, to get a gun from the house, but McCarty convinced the son otherwise.

The EMTs were not able to hear the earlier conversation between McCarty and Strickland, but did hear Strickland make threats after he had been handcuffed. One EMT heard Strickland tell his son to get the gun. The crying child proved to be the poison victim, but by the time the EMTs examined him he had been given food and salt, vomited, and was not in need of further medical attention.

Strickland contends that the EMTs were not in the lawful discharge of their official duties. Although he argues he rightfully told the EMTs to leave his property, the evidence was that they did not enter his yard or driveway but spoke to him from beyond. Despite this location, he ordered them to leave and threatened their persons. He had given an obviously false story about the child, including a version that the child had already been assessed for medical problems due to poison, showing Strickland's recognition that such an assessment was necessary.

Strickland made no claim to be the parent or legal guardian of the child, or otherwise to be one who might be able to refuse medical treatment on behalf of the child. See generally OCGA §§ 31-9-2 (a) (2), 31-9-3; *In re L. H. R.*, 253 Ga. 439 (321 SE2d 716) (1984); *In re Doe*, 262 Ga. 389, 391-393 (2) (418 SE2d 3) (1992). The child and the woman holding him never stated they did not want medical attention. Strickland was obviously not the woman who had called about the emergency, and the EMTs could infer the woman who appeared was both the person who had called and the caretaker of the crying, poisoned child she held.

Regardless of any property right he held at this time, Strickland had no right to threaten the EMTs, or to interfere in the medical treatment of the child, or to order the EMTs from the public street. Such actions constituted willful obstruction of EMTs in the lawful discharge of their duties, as charged. The fact that it was later determined the child did not need professional attention is irrelevant; the EMTs' analysis of the situation was within their duties and it was that duty Strickland obstructed.

Strickland also asserts McCarty had no right to go upon his property, was therefore making an unlawful arrest, and consequently he was justified in opposing that arrest. Even if the confrontation is considered an arrest, it would have been lawful. As noted above, Strickland had already committed the offense of obstruction of an EMT, and McCarty had been so advised before entering the property. Compare *Brooks v. State*, 206 Ga. App. 485, 488 (2) (425 SE2d 911) (1992); *Wagner v. State*, 206 Ga. App. 180, 181-183 (424 SE2d 861) (1992). McCarty not only had probable cause to arrest Strickland on that charge, Strickland's continued interference with the EMTs' attempt to fulfill their duty and examine the still-unattended poison victim was an exigent circumstance that would justify McCarty's entry onto private property without a warrant. See *King v. State*, 217 Ga. App. 889, 891 (459 SE2d 605) (1995); *Coker v. State*, 164 Ga. App. 493, 495 (5) (297 SE2d 68) (1982).

The evidence showed McCarty was in the lawful pursuit of his duties when Strickland offered to do violence to his person, OCGA § 16-10-24 (b), and that the EMTs were in lawful discharge of their duties when he wilfully obstructed them, OCGA §16-10-24.2 (b). This was sufficient to support the convictions. *Jackson*, supra.

2. Strickland also enumerates as error the court's refusal to give three written jury charge requests pertaining to the offense of obstruction of a law enforcement officer. Each dealt with the requirement that a defendant oppose the officer with forcible resistance or threat, not merely argument or obnoxious behavior. See *Kelley v. State*, 171 Ga. App. 222, 223 (319 SE2d 81) (1984); *Moccia v. State*, 174 Ga. App. 764, 765 (331 SE2d 99) (1985); *Cason v. State*, 197 Ga.

App. 308 (398 SE2d 292) (1990), overruled as to misdemeanor obstruction, *Duke v. State*, 205 Ga. App. 689, 690 (423 SE2d 427) (1992). He contends it was error to omit them because his sole defense was that he only verbally objected to McCarty's actions and did not use any forcible resistance or threat until McCarty first restrained him.

" 'The trial court must charge the jury on the defendant's sole defense, even without a written request, if there is some evidence to support the charge. [Cits.]' [Cit.]" *Printup v. State*, 217 Ga. App. 495, 496 (3) (458 SE2d 662) (1995). Accord *Nix v. State*, 135 Ga. App. 672, 674 (4) (219 SE2d 6) (1975); *Jackson v. State*, 154 Ga. App. 867, 868 (2) (270 SE2d 76) (1980). That principle does not apply. First, it does not appear Strickland's sole defense was lack of forceful resistance or threat. He presented no evidence and his closing argument is not in the record, but at the close of the State's evidence he moved for a directed verdict on the ground that McCarty was not authorized to be where he was and that all actions Strickland took were justified. He did not suggest that the evidence supported an inference that Strickland's hinderance of McCarty was only by mere protest, and the record does not show he ever argued to the court that he was entitled to the charges because they concerned his sole defense; in fact, the record only discloses a different defense.

Second, even if "no forcible resistance or threat" was his sole defense, he was not entitled to a charge on it unless it was " 'raised by the evidence or placed in issue.' " (Citation omitted.) *Wainwright v. State*, 197 Ga. App. 43, 44 (2) (397 SE2d 456) (1990). Accord *Davis v. State*, 169 Ga. App. 601, 602 (3) (314 SE2d 257) (1984); *Thompson v. State*, 181 Ga. App. 832, 833 (3) (354 SE2d 20) (1987); *Printup*, supra. Neither Strickland nor any person on his porch or in his yard at the time of the incident testified. Only McCarty testified as to what words passed between him and Strickland before Strickland was restrained. That testimony unequivocally showed a threat on McCarty's life before any physical restraint. When cross-examining McCarty, Strickland did not inquire about the threats to McCarty. He contends that McCarty's testimony was uncorroborated; even were that determinative it is not the case. The EMTs testified as to Strickland's threats before McCarty appeared and after the altercation began. This is sufficient to corroborate McCarty's testimony. See *Ellis v. State*, 176 Ga. App. 384, 386-387 (3) (336 SE2d 281) (1985).

There was simply no evidence presented that raised a defense that Strickland opposed McCarty only by communication that did not rise to the level of forcible resistance or threat.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED MAY 23, 1996.

*Robert W. Lavender*, for appellant.
*Lindsay A. Tise, Jr., District Attorney, Jeanie Ware, Assistant District Attorney*, for appellee.