A08A1623. STEILLMAN v. THE STATE.
(673 SE2d 286)

ANDREWS, Presiding Judge.

Simon Steillman appeals from the judgment entered after a jury convicted him of disorderly conduct, felony obstruction of an officer and two counts of misdemeanor obstruction of an officer. Steillman argues that the evidence was insufficient to support the verdict, that he received ineffective assistance of counsel, that the trial court erred in finding that his waiver of his right to have the charge of felony obstruction presented to the grand jury was knowing and voluntary, and also that the trial court erred in finding that officers had probable cause to arrest him. After reviewing the record, we conclude there was no error and affirm.

The evidence at trial, taken in the light most favorable to the verdict, was that Officer Stuckey was patrolling one morning when he noticed a man on a child's bicycle riding through a parking lot. The businesses were not open yet and the man, identified at trial as Steillman, was looking into the parked cars as he pedaled through

the lot. Stuckey, without getting out of his car, asked Steillman, "What's going on?" Stuckey said Steillman became immediately irate and replied, "Not a damn thing." Stuckey told him to watch his language and Steillman replied, "I don't have to. What the f__k are you going to do about it?" Stuckey got out of his car and Steillman started to pedal away. Stuckey told him to come back so that he could check his ID. Steillman continued to pedal away and yell obscenities. Stuckey followed Steillman and also called for assistance. When Officer Rice arrived, they stopped Steillman but he refused to let go of his bicycle and continued to shout obscenities. After a struggle, and with the help of three more officers, they were able to put the handcuffs on Steillman.

Steillman continued to struggle while officers attempted to search him. Officer Rice testified that Steillman told him "I'm going to kill you," and there was testimony that Steillman was yelling "I'll f_____g kill you."

Steillman testified in his own defense. He stated that he was riding his bicycle through the parking lot on his way to a job interview when Officer Stuckey called to him. Steillman said Officer Stuckey said "Hey, sir. Could you come here?" When Steillman approached the car, Stuckey asked him, "What are you doing? I haven't seen you around here. Where are you from?" Steillman said he answered him, but then Stuckey said "Are you getting smart with me?" Steillman replied, "No, sir." Steillman said Stuckey got out of the car and appeared angry so he became frightened and rode away.

Steillman said when the officers arrested him, they struck him and banged his head. He stated that he was taken to Emory Hospital on South Cobb for tests. Steillman admitted to cursing during the arrest and acknowledged that he might have said "You need to die," but not as if he were going to "do something bad." The prosecutor cross-examined Steillman about the videotape of the arrest and Steillman admitted to saying "hell no" when officers asked him if he were going to cooperate, to calling an officer a racist motherf____r, and to saying "You ain't s__t. You're going to die."

1. Steillman contends that the officer did not have probable cause to arrest him. As the trial court held in its order denying the motion for new trial, Officer Stuckey had probable cause to arrest Steillman for disorderly conduct[1] when Steillman began to curse loudly at him, refused to stop cursing, refused to show any identifi-

---

[1] OCGA § 16-11-39 provides in pertinent part that
[a] person commits the offense of disorderly conduct when such person . . . [w]ithout provocation, uses to or of another person in such other person's presence, opprobrious or abusive words which by their very utterance tend to incite to an immediate breach of the peace, that is to say, words which as a matter of common knowledge

cation and pedaled away from the officer, refusing to stop and continuing to swear. Prior to this, the officer was engaged in a first-tier stop of Steillman. The evidence was that Steillman voluntarily approached the officer and the officer asked him questions about where he lived, where he was going and what he was doing. See *Martin v. State*, 291 Ga. App. 363, 365 (662 SE2d 185) (2008) (actions of an officer requesting to see a driver's license, and inquiring about possible criminal or suspicious activity clearly fall within the realm of the first type of police-citizen encounter and do not amount to a stop).

This Court has held that in a face-to-face confrontation with an officer, certain language can constitute a breach of the peace. In *Johnson v. State*, 143 Ga. App. 826 (240 SE2d 207) (1977), the officer asked defendant to show his peddler's license and defendant replied: "I don't respect any m____f____ women, especially policewomen." Id. at 826-827. Defendant also called the officer a "bitch." Id. This Court held that the above constituted "fighting words" and gave the officer probable cause to believe that an offense was being committed in her presence. Id.

Likewise, in *Evans v. State*, 188 Ga. App. 347 (373 SE2d 52) (1988), defendant called the police officer a g_d___ liar and told the officers to f___ o__. Id. This was sufficient to enable the jury to find beyond a reasonable doubt that these constituted fighting words tending to incite to an immediate breach of the peace. Id. See also *Person v. State*, 206 Ga. App. 324 (425 SE2d 371) (1992) (evidence supported conviction where defendant screamed at officer, "I'm not going to any g_d__n jail and I'm not wearing any mother-f_____g handcuffs." Id. at 325.

Accordingly, the trial court correctly concluded that the officer had probable cause to arrest Steillman for disorderly conduct. It follows that Steillman's argument that the trial court should have granted his motion for directed verdict on the misdemeanor obstruction charges because Steillman was justified in resisting an unlawful arrest is without merit. Moreover, we find that the evidence, as set out above, was sufficient for a jury to find Steillman guilty of misdemeanor obstruction of an officer[2] beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

---

and under ordinary circumstances will, when used to or of another person in such other person's presence, naturally tend to provoke violent resentment, that is, words commonly called "fighting words."

[2] OCGA § 16-10-24 (a) provides: "Except as otherwise provided in subsection (b) of this Code section, a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor."

2. There was also sufficient evidence for the jury to find Steillman guilty of felony obstruction of an officer beyond a reasonable doubt. OCGA § 16-10-24 (b) provides:

> Whoever knowingly and willfully resists, obstructs, or opposes any law enforcement officer, prison guard, correctional officer, probation supervisor, parole supervisor, or conservation ranger in the lawful discharge of his official duties by offering or doing violence to the person of such officer or legally authorized person is guilty of a felony.

Steillman argues that he did not "inflict any violence on the officers." Steillman did, however, offer to do violence to the officer when he threatened to kill Officer Rice. Officer Rice testified that Steillman threatened to kill him and other officers and the videotape corroborated this testimony. Accordingly, the evidence was sufficient for the jury to find Steillman guilty of felony obstruction of an officer beyond a reasonable doubt. *Jackson*, supra. See also *Strickland v. State*, 221 Ga. App. 516, 517-518 (471 SE2d 576) (1996) (evidence sufficient to support verdict of felony obstruction where defendant told sheriff he was going to get a gun and kill him).

3. Steillman claims that his waiver of the right to a grand jury presentment on the charge of felony obstruction of an officer was not knowing and voluntary. He argues that the trial court should have inquired into his decision to give up this right. Steillman cites to no authority on point in support of this argument and we find none. OCGA § 17-7-70 (a) provides:

> In all felony cases, other than cases involving capital felonies, in which defendants have been bound over to the superior court, are confined in jail or released on bond pending a commitment hearing, or are in jail having waived a commitment hearing, the district attorney shall have authority to prefer accusations, and such defendants shall be tried on such accusations, provided that defendants going to trial under such accusations shall, in writing, waive indictment by a grand jury.

Here, the record shows that Steillman filed a signed waiver of formal indictment and arraignment and pled not guilty. There is no requirement that the trial court conduct further inquiry.

4. Steillman argues that he received ineffective assistance of counsel at trial. In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so preju-

diced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). "The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct." *Wheat v. State,* 282 Ga. App. 655, 655-656 (639 SE2d 578) (2006). In analyzing a claim of ineffective assistance of counsel, we note at the outset that a trial court's finding that a defendant has not been denied effective assistance of counsel will be affirmed unless clearly erroneous. *Warren v. State,* 197 Ga. App. 23, 24 (1) (397 SE2d 484) (1990).

Steillman first argues that counsel was ineffective because she failed to advise him of his right to have his case presented to the grand jury. Steillman claims that he could have received a "no bill" on the felony obstruction charge and would not have been tried on that charge. Steillman makes no argument as to why the grand jury would have returned a "no bill" on the charge and we discern none. Defense counsel testified at the hearing on the motion for new trial that Steillman wanted to go to trial. Steillman did not testify at the hearing; therefore, there is no evidence before us that Steillman would have decided not to go to trial had he been informed of his right to have the charge presented to the grand jury. Accordingly, Steillman can show no harm from this alleged deficient performance of counsel.

Next, Steillman claims that counsel was ineffective in failing to file a motion to suppress the evidence of the videotape of Steillman's encounter with the police. Steillman again does not show that this motion, had it been made, had any likelihood of success and therefore can show no harm. The trial court held in its order that any motion to suppress the properly authenticated video would have been without merit. Accordingly, Steillman can show no harm from this alleged ineffectiveness. See *Robbins v. State,* 290 Ga. App. 323, 331 (659 SE2d 628) (2008) ("Failing to file a futile or meritless motion cannot amount to ineffective assistance.").

Likewise, for these same reasons and in light of our holding in Division 1, Steillman's contention that counsel was ineffective for failing to file a pretrial motion to dismiss for lack of probable cause to arrest is meritless. See *Robbins,* supra.

Steillman also contends that counsel should have filed a motion for continuance in order to view the videotape of his arrest prior to trial. The transcript shows that Steillman and counsel did view the videotape of his arrest prior to trial. Steillman makes no argument to show that further study of the videotape would have changed the outcome of the trial. See *Strickland,* supra.

Steillman claims that trial counsel should have filed a request for a lesser included charge of misdemeanor obstruction to the felony obstruction charge. "Decisions about which jury charges to request are strategic and provide no grounds for reversal unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them." *Leonard v. State*, 279 Ga. App. 192, 194-195 (630 SE2d 804) (2006). Here, Steillman's defense was that he did not threaten to kill the officer. Therefore, he was guilty of felony obstruction or he was not guilty of any offense. Counsel's failure to request a charge on misdemeanor obstruction as a lesser included offense was not, therefore, so patently unreasonable that a competent attorney would not have made that decision. Id.

Finally, Steillman contends that counsel was ineffective for failing to subpoena his medical records to show injuries received in his struggle with police. Steillman does not state what these medical records would have shown or how this would have changed the outcome of the trial. Therefore, he cannot satisfy the second prong of *Strickland*, supra.

*Judgment affirmed. Bernes and Doyle, JJ., concur.*

DECIDED JANUARY 29, 2009.

*Louis M. Turchiarelli*, for appellant.
*Patrick H. Head, District Attorney, Erman J. Tanjuatco, Dana J. Norman, Assistant District Attorneys*, for appellee.