**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 16, 2021**

# In the Court of Appeals of Georgia

A20A1900. ROBINSON v. THE STATE.                    DO-066 C

DOYLE, Presiding Judge.

Following a jury trial, Javarris Mashod Robinson was convicted of felony obstruction of an officer and driving under the influence ("DUI less safe").[1] Following the denial of his amended motion for new trial,[2] Robinson filed this appeal. He argues that the trial court erred (1) by failing to charge the jury on the lesser included offense of misdemeanor obstruction; and (2) by admitting evidence of a

---

[1] The jury found Robinson not guilty of a second count of felony obstruction of an officer and a second count of driving under the influence. The court sentenced him to six years with four years to be served in imprisonment.

[2] Robinson did not receive notice of the order denying his motion for new trial, and the State moved for the trial court to vacate its order and reenter the order, which the trial court did. Thereafter, Robinson filed a timely notice of appeal from that order.

prior burglary conviction for impeachment purposes. For the reasons that follow, we reverse.

1. *Facts.* Viewed in the light most favorable to the verdict,[3] the record shows that in the early morning hours of December 31, 2016, a worker at a fast-food restaurant called 911 to report that a man was passed out in the driver's seat of a running vehicle in the restaurant's drive-thru lane and had been there for approximately 30 minutes. The worker reported that she and others had attempted to rouse the man, but they had been unable to do so.

The first officer responded to the scene, and he pulled his cruiser up behind the vehicle in which the driver, later determined to be Robinson, was passed out. The first officer's cruiser was equipped with a dash camera that recorded the interaction, which lasted approximately 20 minutes, and the recording was played for the jury ("the first video"). A second officer arrived at the scene approximately seven minutes into the incident, and his cruiser's dash camera video was also played for the jury ("the second video"). A third video of Robinson was taken while he was in custody in the

---

[3] See *Haygood v. State*, 338 Ga. App. 189, 190 (789 SE2d 404) (2016). See also *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2

back of the first officer's cruiser on the way to the jail, and it was also played for the jury ("third video").

(a) *First video*. The first video showed that the first officer exited his vehicle and approached Robinson's car, squeezing between the vehicle and the restaurant wall to access the driver's side. The first officer repeatedly called to Robinson, telling him to wake up, banged on the roof of the car to make noise, and eventually reached into the car across Robinson, turned off the engine and removed the keys from the ignition. Robinson did not awaken until his cellphone rang, approximately three minutes after the first officer tried to rouse him, at which point the officer commanded him to put his hands on the steering wheel; when Robinson failed to obey, the officer ordered him to get out of the car, slamming the car door against the restaurant wall. In response to the first officer's commands to exit, Robinson repeatedly asked "for what," "for what," and the first officer explained that Robinson had been passed out for 30 minutes in the drive through, smelling like alcohol; Robinson did not seem to comprehend, continued asking what he had done. Frustrated, the first officer stated that the interaction could go "one of two ways," and he did not want it to "get bad," again ordering Robinson to exit the vehicle. Robinson again asked to know what he had done, and after the officer explained the situation

3

for a second time, Robinson received a phone call, told the caller where he was located, and finally stepped out of the car.

Rather than exiting to the back of his vehicle (and to the front of the cruiser) as directed by the first officer, Robinson walked around the front of his own car. Robinson responded to the first officer's repeated order to come to the back of the car, saying, "I don't have nothing to say to you," so the officer approached Robinson. Robinson stood still as the first officer approached, initially clutching cash in his left hand and holding his phone in his right, but then attempting to put the cash into his front pant pocket, at which point the officer yelled to get his hand away from his pocket. Robinson asked why he should not put his money away, and the first officer continued to approach, yelling commands, and Robinson put both hands above his head. Robinson slowly backed away from the first officer with his hands up as the officer continued forward and grabbed at Robinson, who said, "don't touch me." As Robinson backed away and the first officer continued toward him, the two moved in front of Robinson's vehicle, which obstructed the camera view; Robinson said, "hey man, watch out," and the first officer lunged toward him, appearing to wrap his arms around the back of Robinson's head. The camera view of the men was obstructed by the vehicle for approximately three to four seconds, although two seconds were

4

captured in the second video. The first video showed the two men in a struggle, and then Robinson, who is heard saying "quit man, get off me," broke away from the first officer, backing up into full view of the cruiser camera again; the first officer returned to full view with his taser brandished at Robinson, walked toward him, and ordered him to "get down now."

While the obstructed portion of the confrontation occurred, a second police cruiser arrived in the parking lot, and the second officer quickly exited, yelling at the first officer, who was brandishing the taser, to "pop him." In response to the first officer's order to "get down," Robinson, who slowly backed away, yelled, "no bro, I ain't done nothing." The first officer again ordered Robinson to get down on the ground, tasing him. Robinson screamed and doubled over, and the second officer jumped on his back, slamming him to the ground, as Robinson cradled his arms to his chest, where the taser probes had hit him; the second officer pulled Robinson's right arm out, handcuffing him, as Robinson yelled, "get off me man, I ain't done sh-t to you bro, you got me f-cked up!" The first officer removed the taser probes from Robinson's chest and helped push him face down on the ground, aiming the front of the taser into Robinson's back. The second officer yelled at Robinson to give him "your other hand, now," and the first officer threatened Robinson that he was "about

5

to get lit up again." Robinson repeatedly yelled "I ain't did sh-t to you, bro," and the second officer eventually cuffed Robinson's other hand; Robinson had not hit or kicked either officer.

Robinson was cuffed and lying face down on the pavement with the second officer still kneeling on him; Robinson attempted to roll back and forth, yelling at the second officer to "get the f-ck off me; don't touch me," while the officers searched his pockets, accusing him of having contraband. Robinson called the officers names, and they attempted to make him stand up, but Robinson lost his footing and fell back to the ground, with the second officer falling on top of him, slamming Robinson's head into the passenger side of his vehicle; immediately after Robinson's head hit the vehicle, the second officer yelled out that Robinson had grabbed his genitals. Robinson yelled that he had done no such thing, and the two officers continued to struggle to get Robinson to stand up and walk to the cruiser. Although the remainder of the interaction is off camera, the two officers eventually forced Robinson into the back seat of the first officer's cruiser.

(b) *Second video.* The second video consisted of scenery as the officer's vehicle quickly pulled into the parking lot, and approximately 12 seconds in, Robinson and the first officer appeared in the frame. Robinson was standing behind

the first officer either with his arms secured by the officer or with his arms around the officer. The video does not show how the two men came to be in that position. Next, either the first officer pushed Robinson backward and away, or Robinson freed his arms from the officer's grip and stumbled backward; the first officer drew his taser, turned around, pointed it at Robinson, and the second officer yelled for the first to "pop him." Robinson did not make any throwing motion at any point during the four seconds the men were visible in the video. After that point, no more of the incident was visible, but audio of the second officer could be heard.

(c) *Third video.* The third video showed Robinson in the back of the first cruiser being transported to jail. Robinson's hands were cuffed behind him, and he moved around in the seat, but after the vehicle began moving, he passed out. The video did not show the entire ride, or Robinson's removal from the cruiser into the jail.

2. *Testimony.* (a) *The first officer.* The first officer testified that he received a call in the early morning hours of December 31, 2016, that an individual in a vehicle was passed out and blocking the drive-thru of a restaurant. The first officer testified that he was trained to recognize when an individual is impaired from drugs or alcohol (which he later observed Robinson to be), and upon approaching Robinson in the

7

vehicle, he detected the smell of alcohol. Robinson was unresponsive and clutching money in his hand. The first officer noticed an empty bottle of liquor in the backseat of the vehicle and an empty beer can in the driver's door, and when Robinson eventually awoke, the officer intended to have him exit the vehicle and perform field sobriety tests. When Robinson exited the vehicle, the first officer noticed that he had blood-shot watery eyes, had slurred speech, and leaned on the car, indicating to the officer that Robinson was intoxicated.

The first officer testified that Robinson disobeyed his commands to come to the back of the vehicle, so he approached Robinson at the front of the vehicle; as he attempted to physically direct Robinson to the front of the cruiser, Robinson "jerked his hand away" and said "don't touch me," which caused the first officer to attempt to detain Robinson. As he moved to detain Robinson, the officer said that Robinson "assumed what I — what I know to be a fighting stance. He lower[ed] his stance, put[] his arms up, says, [']man, watch out,['] like he's ready to fight." In response to this "fighting stance," the first officer testified that he "went to detain [Robinson] again . . . but he managed to position himself behind me, grabbed me from behind in a bear hug type grab and attempted to lift me up, at which point I felt my toes nearly leave the ground." The first officer further explained that Robinson grabbed him

8

under the arms, attempted to lift him up off the ground in what the officer "believe[d] to throw me to the ground to either injure me or incapacitate me in some manner." The officer admitted that his feet did not leave the ground, but claimed he was on his "tip toes."

The first officer testified that he "was able to push [Robinson] off of me, at which point I withdrew my taser, pointed it at him, gave him multiple commands to get to the ground," but because Robinson did not get to the ground, the first officer tased him at the second officer's urging.

The first officer testified that while the second officer was on Robinson's back trying to cuff him, the two performed a search of Robinson, who at some point, grabbed the second officer's genitals. The first officer testified that Robinson called him and the other officer names and continued to struggle while they moved him to the back of the cruiser, and he fell asleep during the ride to the jail.

On cross-examination, the first officer admitted (1) that prior to attempting to escort Robinson to the cruiser, he told Robinson he fell asleep and smelled like alcohol, but had not told Robinson he was being arrested or charged with resisting, which is the reason the officer gave for detaining Robinson; (2) that he did not read

9

Robinson the implied consent notice related to DUI testing; and (3) that he did not attempt to obtain a search warrant to obtain a blood sample from Robinson.

(b) *The second officer*. The second officer testified that as he pulled up to the scene, he saw Robinson with his arms "wrapped around [the first officer's] waist area," and although the second officer could not say whether the first officer's feet left the ground, he could tell "by both of them's body language" that Robinson was trying to lift the first officer, "and I don't know, like a wrestling move just to try to do a takedown on him." The second officer testified that he instructed the first officer to tase Robinson in order to gain compliance over him, and Robinson continued to struggle against being handcuffed after they had gotten him to the ground. The second officer claimed that Robinson "grabbed [his] testicles" while they were conducting the search of Robinson. The second officer also testified that Robinson resisted being moved into the patrol car, but admitted Robinson was not "combatively resisting" but was making it physically difficult for the officers to put him in the cruiser.

(c) *Robinson.* Robinson testified, admitting that he did not follow the first officer's orders to go to the front of the police cruiser because he did not believe that he was under arrest at that time. Robinson contended that he pulled away from the first officer because he was not under arrest and pushed the officer's hands off of him,

10

disputing that he ever grabbed, hit, or tried to body slam the first officer.[4] Robinson disputed both officers' versions of events, maintaining that the first officer initiated contact, and he bobbed away to avoid being touched by the first officer; Robinson testified that the second officer merely observed him trying to get away from the first officer, who had grabbed his arms. Robinson also admitted that after he was on the ground he cursed at the officers and called them names because he was angry that he had been tased and was being arrested. Robinson disputed ever fighting with the officers and denied ever taking "a fighting stance," but he admitted that he avoided their attempts to grab him or handcuff him because he did not believe that they should have been able to arrest him. Robinson admitted that he drank beer earlier that day, but he disputed that he drank any hard liquor and did not admit that he was intoxicated during the incident.

In response to Robinson's testimony, the State moved to introduce evidence of Robinson's prior burglary conviction for impeachment purposes. The trial court allowed the State to introduce the evidence under OCGA § 24-6-609 (a) (2) over Robinson's objection.

---

[4] Robinson also disputed the second officer's contention that Robinson "grabbed his testicles," and the jury acquitted Robinson of this charge of obstruction.

11

At the close of evidence, the State objected to the trial court's inclusion of the lesser included charge of misdemeanor obstruction. The trial court responded that it was the court's "standard charge," but that he had not received a request from the defendant for a lesser included charge, asking Robinson whether he was requesting it then. Robinson responded that he was, arguing that it should be included because it was for the jury to decide whether Robinson was being violent or offering to do violence. The State argued, however, that the facts did not support giving the charge. The trial court agreed to remove the charge for the lesser included offense, finding that "there was an extended physical altercation" and "threats made by the defendant." After the full jury charge, Robinson again objected to the trial court's omission.

After deliberation, the jury found Robinson guilty of one count of obstruction for "knowingly and willfully resist[ing the officer] by offering to do violence to said person, by grabbing the officer in an attempt to throw the officer to the ground." The jury also found Robinson guilty of one count of DUI less safe. This appeal followed.

1. First, Robinson argues that the trial court erred by failing to give his requested charge of misdemeanor obstruction as a lesser included offense of felony obstruction. We agree.

12

"We review the trial court's refusal to give a requested charge for an 'abuse of discretion.'"[5]

(a) As an initial matter, the State contends that because Robinson failed to timely file a written request to charge the lesser-included offense of misdemeanor obstruction, the trial court's decision not to give the charge should not be reviewed. As the trial court notes in its denial of Robinson's motion for new trial, however, the trial court initially had included the charge itself, making a request by Robinson unnecessary. When the State moved to have the charge omitted, Robinson argued in favor of retaining the charge, filed a written request on the last day of trial, and the State argued the issue on the merits. At no time did the State raise the issue of Robinson's failure to file a written request to charge, and the trial court found that

---

[5] *Jones v. State*, 352 Ga. App. 380, 386 (2) (a) (834 SE2d 881) (2019), quoting *Salazar-Balderas v. State*, 343 Ga. App. 201, 203 (1) (806 SE2d 644) (2017).

13

Robinson had perfected his objection to its failure to include the charge.[6] Accordingly, the State's waiver argument is without merit.

(b) Robinson contends that the evidence presented at trial established that the jury could have found that he committed misdemeanor obstruction based on his attempts to evade the officers' attempts to take him into custody rather than accepting the officers' versions of the events that he was doing violence to the first officer by grabbing him. Thus, Robinson argues, the trial court erred by granting the State's request to remove the portion of the jury charge on the lesser included offense.

Pursuant to OCGA § 16-10-24 (2016),

(a) Except as otherwise provided in subsection (b) of this Code section, a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor.

---

[6] See *Salazar-Balderas*, 343 Ga. App. at 203-205 (1) (reviewing the substantive argument on appeal from the denial of an oral request to give a jury instruction rather than finding it waived for failure to file a written request for an instruction because the trial court addressed the merits before denying it, and there was no confusion as to which instruction was requested and denied). Cf. *Hicks v. State*, 287 Ga. App. 105, 106 (1) (650 SE2d 767) (2007) (reviewing an appeal from a motion to suppress and explaining that "[t]he State waived its right to object to the timing or manner in which the motion was brought by failing to object to the motion at the time it was heard.") (punctuation omitted).

(b) Whoever knowingly and willfully resists, obstructs, or opposes any law enforcement officer . . . in the lawful discharge of his or her official duties by offering or doing violence to the person of such officer . . . is guilty of a felony and shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years.

"While misdemeanor obstruction is a lesser included offense of felony obstruction, where the evidence shows completion of the greater offense, it is not necessary for the court to charge on a lesser included offense."[7]

The lesser offense may be an included offense in a particular case if the facts alleged in the indictment and the evidence presented at trial to establish the charged offense are sufficient to establish the lesser offense as well. Thus, whether a lesser offense is included in a greater offense as a matter of fact must be determined on a case-by-case basis, depending upon the facts alleged in the indictment and the evidence presented at trial.[8]

Here, Robinson was charged and convicted of "knowingly and willfully resist[ing the officer] by offering to do violence to said person, by grabbing the

---

[7] (Punctuation omitted.) *Chynoweth v. State*, 331 Ga. App. 123, 129 (4) (768 SE2d 536) (2015), quoting *White v. State*, 310 Ga. App. 386, 390-391 (3) (714 SE2d 31) (2011).

[8] (Punctuation omitted.) *Bennett v. State*, 244 Ga. App. 149, 151 (2) (534 SE2d 881) (2000), quoting *Strickland v. State*, 223 Ga. App. 772, 774 (479 SE2d 125) (1996).

15

officer in an attempt to throw the officer to the ground." Grabbing an officer and attempting to throw him to the ground would be an act of violence toward the officer,[9] rather than mere obstruction or hindrance of an arrest in the case of misdemeanor obstruction.[10] Robinson testified, however, that he never grabbed the first officer or attempted to injure him or throw him down, but instead was dislodging his arm from the officer's grasp.[11] Robinson testified, and the video shows, that the first officer instigated all physical contact between the two men. The first video offers only an obstructed view of the particular portion of the incident and the second video shows the result, which is ambiguous as to whether Robinson is in the act of grabbing the

---

[9] See, e.g., *Mayfield v. State*, 276 Ga. App. 544, 545 (1) (623 SE2d 725) (2005) (holding that evidence was sufficient to support a felony obstruction conviction because the defendant "violently struggled" when the officers attempted to arrest him, and for felony obstruction for kicking an officer in the groin); *Panzner v. State*, 273 Ga. App. 868, 869-870 (616 SE2d 201) (2005) (striking and kicking officer during arrest was sufficient to support felony obstruction conviction).

[10] See, e.g., *Meeker v. State*, 282 Ga. App. 77, 78-79 (1) (637 SE2d 806) (2006) (shoving an officer into a vehicle constituted felony obstruction while resisting being handcuffed constituted misdemeanor obstruction); *Williams v. State*, 196 Ga. App. 154, 155-156 (1) (395 SE2d 399) (1990) (upholding conviction for misdemeanor obstruction because the evidence showed the defendant grabbed the officer's arm as compared to the allegation of the indicted felony obstruction charge, which alleged the defendant had hit the officer in the face and head).

[11] See *Williams*, 196 Ga. App. at 155-156 (1).

first officer or was being held and pulled away. In that way, this case differs from those cases in which either the greater offense or none at all occurred.[12] Additionally, despite the trial court's conclusion otherwise, the only possible "threat" made by Robinson in the first eight minutes of the video and prior to the tasing was Robinson's statement "hey man, watch out," which is ambiguous at best and obviously not a clear verbal threat or offer to do violence, and the same is true as to the issue of whether Robinson took a "fighting stance" as testified to by the first

[12] Compare with *Chynoweth*, 339 Ga. App. at 129 (4) (explaining that because defendant made punching motions toward officer, it was not necessary for the trial court to give the instruction for a lesser included offense); *Carlson v. State*, 329 Ga. App. 309, 311 (2) (764 SE2d 890) (2014) (explaining that although the trial court may have instructed the jury incorrectly, the evidence showed that defendant punched and kicked the officer, which constituted violent obstruction supporting felony obstruction conviction); *Watson v. State*, 328 Ga. App. 832, 836 (1) (763 SE2d 122) (2014) (holding that no instruction for lesser included offense was necessary because under the defendant's version of events, he committed no crime); *Ingram v. State*, 317 Ga. App. 606, 606-607 & 608 (2) (732 SE2d 456) (2012) (holding that because the defendant kicked officers, it was not ineffective assistance of counsel to pursue an "all or nothing" defense); *White*, 310 Ga. App. at 390-391 (3) (holding that trial court's refusal to give instruction on misdemeanor obstruction was not error because kicking and biting officer constituted doing or offering to do violence); *Owens v. State*, 288 Ga. App. 771, 773 (1) & 774 (2) (655 SE2d 244) (2007) (screaming, threatening, swinging, and kicking at officers constituted felony obstruction of an officer, and it was not ineffective assistance of counsel to fail to request a charge for misdemeanor obstruction based on the facts presented at trial).

officer.[13] Thus, under the particular evidence in this case, including the video evidence, whether Robinson offered to do violence by grabbing the officer, or whether he was attempting to pull away and therefore committed only misdemeanor obstruction was an issue for the finder of fact. Accordingly, the trial court abused its discretion by failing to provide the instruction for the lesser-included charge. Therefore, we reverse his conviction for obstruction. Nevertheless, because there was sufficient evidence to support Robinson's conviction, he may be retried for that offense.[14]

2. Robinson also argues that the trial court erred by admitting evidence of a prior burglary conviction for impeachment purposes under OCGA § 24-6-609 (a) (2) because it was not a crime of dishonesty.

---

[13] See, e.g., *Steillman v. State*, 295 Ga. App. 778, 781 (2) (673 SE2d 286) (2009) (threatening to kill officer constituted an offer to do violence supporting a conviction for felony obstruction).

[14] See, e.g., *Raines v. State*, 304 Ga. 582, 589 (2) (b) (820 SE2d 679) (2018) ("[T]he defendant may be retried if the evidence presented was sufficient to support his conviction for the crimes charged.").

"We review the trial court's decision to admit this evidence under an abuse of discretion standard."[15]

After Robinson advised the trial court that he intended to take the stand, the State moved to impeach him with evidence that he had been convicted of burglary, arguing that it involved an act of dishonesty. There were several discussions about the matter, but eventually, the trial court allowed the impeachment, explaining that "burglary is an act of dishonesty. Just about any felony is. That's the trouble. Any felony rises to that level, so, yes, it is an act of dishonesty."

(a) As an initial matter, the State argues that Robinson did not adequately object, and we should therefore review this enumeration under the plain error standard of review. We disagree. At first, Robinson objected to the admission on the ground that it was more prejudicial than probative because it was not clear the trial court was admitting the evidence on the basis that burglary was a crime of dishonesty under OCGA § 24-6-609 (a) (2) rather than subsection (a) (1), under which subsection Robinson's argument would have applied. Later, although the trial court

---

[15] *Jordan v. State*, 344 Ga. App. 267, 272 (5) (810 SE2d 158) (2018) (holding that a trial court did not abuse its discretion by admitting evidence under *OCGA § 24-6-609 (a) (1)* of a defendant's prior conviction for burglary in a case involving an alleged armed robbery), citing *Robinson v. State*, 336 Ga. App. 627, 631 (3) (785 SE2d 304) (2016).

cut him off mid-objection, trial counsel disputed that burglary, as a general matter, constitutes a crime of deceit such that it falls under the purview of OCGA § 24-6-609 (a) (2). Accordingly, Robinson did not waive this issue.

(b) No Georgia case has found that burglary constitutes a crime of dishonesty under OCGA § 24-6-609 (a) (2), and there was no evidence presented at trial that established Robinson completed the burglary using deceitful means or false statements.[16] We have approved a trial court's admission of burglary convictions for purposes of impeachment under OCGA § 24-6-609 (a) (1) when the court has applied the appropriate balancing test, which did not occur in this case.[17] Additionally, no case law supports the trial court's conclusion that "just about any" felony constitutes a crime of dishonesty. Accordingly, the trial court abused its discretion by allowing the State to impeach Robinson with evidence of the burglary under OCGA § 24-6-609

---

[16] Cf. *Adams v. State*, 284 Ga. App. 534, 538-540 (3) ( 644 SE2d 426) (2007) (holding that a "prior conviction for misdemeanor theft by receiving stolen property is not a crime involving dishonesty within the meaning of [former] OCGA § 24-9-84.1 (a) (3)").

[17] See *Jordan*, 344 Ga. App. at 272 (5). See also *Hopkins v. State*, 309 Ga. App. 298, 300 (1) (709 SE2d 873) (2011) (holding under prior statute that the trial court did not abuse its discretion in admitting the defendant's prior burglary conviction in a prosecution for shoplifting because the defendant testified that he had no intention of committing theft, making his credibility highly relevant to the jury's decision) See *State v. Jones*, 297 Ga. 156, 158 (1) (773 SE2d 170) (2015).

20

(a) (2) absent engaging in the balancing test required to admit such evidence under OCGA § 24-6-609 (a) (1).

(c) Finally, we disagree with the State's contention that admission of evidence of the burglary was harmless. The evidence was not overwhelming given the ambiguous nature of the video as compared to the testimony of the officers and Robinson, as well as the lack of evidence of Robinson's level of intoxication. The jury acquitted Robinson on two counts (one obstruction and one DUI), and therefore, it is plausible that the erroneous admission of Robinson's burglary conviction played a role in the jury's guilty verdict as to the remaining charges of obstruction and DUI less safe.[18]

Accordingly, we reverse the remaining conviction for DUI less safe, again noting that Robinson may be retried based on the sufficient evidence as presented at trial.

*Judgment reversed. McFadden, C. J., concurs. Hodges, J., dissents.*

---

[18] See, e.g., *Gaskin v. State*, 334 Ga. App. 758 764-765 (1) (b) (780 SE2d 426) (2015) (explaining that because the evidence was not overwhelming, it is not highly probable that improperly admitted evidence of prior convictions did not affect the jury's verdict).

21

A20A1900. ROBINSON v. THE STATE.

HODGES, Judge.

Because the evidence showed either the completed crime of felony obstruction or no crime at all, the trial court did not abuse its discretion in refusing to charge the lesser-included offense. Further, while the trial court's decision to admit a burglary conviction for impeachment purposes was error, that error was harmless. Robinson's convictions should be affirmed, and I respectfully dissent.

1. What transpired between police and Robinson from the moment he was woken up in his car until he passed out in the police car was fraught with conflict. In

my opinion, however, the majority unnecessarily focuses on details of the interaction between Robinson and the police which are not relevant to the narrow issue of whether Robinson "offer[ed] to do violence to [the first officer], by grabbing the officer in an attempt to throw him to the ground[.]" Indeed, it is not even readily apparent that the majority viewed the evidence, as we must, in a light most favorable to the jury's verdict. This factual allegation alone serves as the sole basis of Robinson's conviction for felony obstruction. The other transactions between Robinson and the police on the night in question are not legally relevant on this point. While I agree with the majority that, *as to some other moments in the physical altercations between Robinson and the police*, the evidence could support either a finding that Robinson was merely attempting to evade police or that he was intending to harm police. As to the *specific conduct giving rise to the felony obstruction charge*, however, the evidence only supports one of two conclusions – (1) no crime was committed because Robinson did not grab the officer around his midsection or attempt to throw him, as testified to by Robinson; or (2) that Robinson did wrap his arms around the officer's midsection in an attempt to throw him, as demonstrated by the video evidence and corroborated by the officers' testimony.

2

The evidence is clear. After failing to immediately obey the officer's lawful command that he exit the vehicle, and his later command to "get down now," Robinson moved to the front of his vehicle, again disobeying a lawful command to come to the rear of his car,[1] and even in the video that is partially obstructed by Robinson's vehicle, one can clearly see the men's hands and arms rising and falling, and their heads moving, as they engage in a struggle. The second police video offers an unobstructed view of part of that struggle. It shows Robinson behind the officer, with his chest pressed against the officer's back and his arms wrapped around the officer's midsection as the men grapple.

The first officer testified that Robinson grabbed him from behind in a "bear hug" and attempted to lift and throw him down. The second officer saw Robinson's arms "wrapped around the [first officer's] waist" as he tried to lift the officer with a "wrestling move just to try to do a takedown[.]"

The majority reasons that the question is "whether Robinson offered to do violence by grabbing the officer, or whether he was attempting to pull away and therefore committed only misdemeanor obstruction." I disagree, because Robinson

---

[1] Had Robinson complied with this command to come to the rear of his own car, there would have been an unobstructed video view of what transpired, thus providing a clear account for the safety both of Robinson and of the officer.

3

specifically denied the elements of the crime as charged in the indictment. Robinson testified that he never tried to throw the officer. He also testified, "I *never tried to pick [the officer] up*," and "I didn't *never put my hands around him*." (Emphasis supplied.)

As the majority writes, "[g]rabbing an officer and attempting to throw him to the ground would be an act of violence toward the officer." *Campbell v. State*, 333 Ga. App. 829, 831 (1) (777 SE2d 507) (2015) (finding evidence sufficient for felony obstruction conviction where defendant "pinned [officer's] arms in a bear hug," shoved him onto a table, and threw him over his shoulder); see also *Fricks v. State*, 210 Ga. App. 562, 562-563 (1) - (2) (436 SE2d 752) (1993) (finding that, where defendant shoved or kicked officer, charge on lesser-included misdemeanor obstruction was not warranted, as evidence showed completion of greater offense of felony obstruction).[2]

Under Robinson's version of events, no offense was committed because he claims he never wrapped his arms around the first officer or attempted to lift or throw him. The video evidence and testimony of the officers, however, supported the

---

[2] I note that the first police video clearly shows Robinson, after police have taken him to the ground, repeatedly kicking one of the officers with his booted foot. While that alone would be felony obstruction, it was not charged in the indictment.

4

offense of felony obstruction as charged for the act of Robinson wrapping his arms around the first officer and attempting to lift and throw him. "[W]here the evidence shows either the completed offense as charged or no offense, such evidence will not support a verdict for one of the lesser grades of the offense, and the court should not charge on the lesser grades of the offense." (Citation and punctuation omitted.) *Watson v. State*, 328 Ga. App. 832, 835 (1) (763 SE2d 122) (2014). Here, there was no evidence which would have supported a finding of misdemeanor obstruction as to the specific conduct which formed the basis of the indictment. Therefore, the trial court correctly did not charge the lesser-included offense of misdemeanor obstruction.

2. While the trial court did not err in refusing to charge on misdemeanor obstruction, it did err in admitting the burglary as a crime of dishonesty under OCGA § 24-6-609 (a) (2). But the error was harmless, because it was highly improbable that this contributed to the verdict either on the felony obstruction or the DUI counts.

As the majority notes, Georgia appellate courts have not yet examined whether burglary is a crime involving dishonesty or false statement under OCGA § 24-6-609 (a) (2). In such instances, and where the Georgia rule is materially identical to the

federal rule of evidence on which it is modeled,[3] "federal case law applies here." *State v. Almanza*, 304 Ga. 553, 553 (820 SE2d 1) (2018). Thus, we look to federal appellate decisions, especially the Eleventh Circuit. *Olds v. State*, 299 Ga. 65, 69 (2) (786 SE2d 633) (2016). The Eleventh Circuit has determined that "[t]his circuit does not consider burglary a crime involving dishonesty or false statement, admissible under Rule 609 (a) (2)." *United States v. Pritchard*, 973 F.2d 905, 909 (II), n. 6 (11th Cir. 1992).[4] However, "[n]ot all trial errors require reversal[.]" *Peoples v. State*, 295 Ga. 44, 55 (4) (c) (757 SE2d 646) (2014).

> The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict. In determining whether trial court error was harmless, we review the record de novo, and we weigh the evidence as we would expect reasonable jurors to have done so as opposed to viewing it all in the light most favorable to the jury's verdict.

(Citations and punctuation omitted.) Id.

---

[3] See Fed. R. Evid. 609 (a) (2).

[4] Compare *United States v. Brown*, 603 F.2d 1022, 1029 (5) (1st Cir. 1979) (noting, in the context of Rule 609 (b), that "[b]urglary and petit larceny have a definite bearing on honesty which is directly related to credibility.") *Brown* refers to a portion of Rule 609 not at issue here. Nonetheless, our Supreme Court has found that where circuit appellate court decisions are in conflict regarding the federal rules of evidence, Eleventh Circuit precedent prevails. *Almanza*, 304 Ga. at 558-559 (3).

The evidence of Robinson's guilt, during the narrow snapshot of time relevant to the felony obstruction charge, was strong, for the reasons outlined above. Weighing that evidence as a reasonable jury would, I believe it is highly probable that the error in admitting the burglary conviction did not contribute to the jury's verdict. *Subar v. State*, 309 Ga. 805, 809-810 (3) (848 SE2d 109) (2020).

The evidence supporting Robinson's conviction for DUI less safe is likewise strong. It is undisputed that Robinson drove to the restaurant's drive-through and blocked it by passing out at the wheel of his car. The keys were in the ignition, the engine was running, and the car's lights were on. It is undisputed that Robinson's speech was slurred, his eyes were bloodshot, and he smelled of alcohol. The officer saw an empty liquor bottle and an empty beer can in the car. Robinson admitted drinking a "couple of beers" that evening. The video unambiguously shows the officer beating on the roof of Robinson's car for some minutes in an unsuccessful attempt to wake him, but he was "passed out." The officer testified that Robinson was "definitely intoxicated" based not just on Robinson's "trouble standing" and need to "lean up" against his car for balance, but also on his inability to obey the officer's clearly articulated commands, his failure to "listen, failure to understand, having to be told the same thing many times." *Bell v. State*, 291 Ga. App. 437, 440 (3) (662

7

SE2d 248) (2008) (evidence sufficient to sustain conviction for DUI less safe where driver drove erratically, was confused, staggered, displayed slurred speech, bloodshot eyes, and smelled strongly of alcohol, and where officers observed an open beer container in vehicle); *Stephens v. State*, 271 Ga. App. 634, 635 (610 SE2d 613) (2005) (evidence sufficient to support conviction for DUI less safe where driver was "passed out behind the steering wheel of a haphazardly parked vehicle with the engine running and the lights on.")

For the foregoing reasons, I believe the error was harmless, as "the evidence of [Robinson's] guilt was strong[,] . . . [and] it is highly probable that the introduction of the prior burglary did not contribute to the jury's verdict." *Subar*, 309 Ga. at 809-810 (3). I respectfully dissent.