**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**August 15, 2014**

# In the Court of Appeals of Georgia

A14A1039. WATSON v. THE STATE.

BARNES, Presiding Judge.

A jury found Everett Thomas Watson guilty of two counts of felony obstruction of a law enforcement officer, and the trial court denied his motion for a new trial. On appeal, Watson contends that the trial court erred in rejecting his written request to charge the jury on the lesser included offense of misdemeanor obstruction. Watson further contends that the trial court erred in excluding evidence that he had previously been the victim of a home invasion, which he sought to introduce to support his affirmative defense that he used force to defend his habitation. Discerning no error, we affirm.

"Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to sustain the verdict." *Anthony v. State*, 317 Ga. App. 807 (732 SE2d 845) (2012). So viewed, the evidence showed that Watson lived with his girlfriend in an apartment in Whitfield County. In

April 2012, a police detective interviewed Watson and his girlfriend at their apartment regarding their alleged involvement in a drug crime. During the interview, the detective observed numerous weapons near a coffee table in the living room. When the detective questioned Watson, he became verbally aggressive and confrontational, leading the detective to terminate the interview and leave the apartment.

Around 11:00 a.m. on May 4, 2012, the detective returned to the apartment with his partner to serve an arrest warrant on Watson's girlfriend. Both wore plain clothes but had their badges displayed. The detective's partner knocked on the front door, and when Watson approached and asked who was there, the partner gave only his first name. Watson did not open the door, but after a few more minutes passed with continued knocking, his girlfriend came to the door and started to open it, but then attempted to shut it when she saw the detective and his partner standing there. However, the detective and his partner stopped the girlfriend from shutting the door and entered the living room, verbally identified themselves as law enforcement officers, and informed the girlfriend that they had a warrant for her arrest. Watson was standing in the living room and saw the entire interaction.

After the detective showed the girlfriend the arrest warrant, Watson suddenly lunged toward the coffee table and grabbed a can of what was later confirmed to be pepper spray. Because he was focused on the girlfriend at the time, the detective did not see Watson grab the pepper spray, but his partner saw Watson do it and moved to intercept him. The detective's partner and Watson began to fight for control over the can, and the detective immediately joined his partner in the struggle once he realized what was happening. Although the detective ordered Watson to stop struggling and put his hands behind his back, Watson continued to resist and was able to drag the detective and his partner over to a couch. Watson dropped the pepper spray, but then repeatedly attempted to reach for something toward the edge of the couch. The detective and his partner later discovered that a hammer was located at the side of the couch where Watson had been reaching.

As Watson continued to struggle and reach for the hammer, the detective drew his firearm and threatened to shoot Watson if he failed to comply with the detective's orders. At that point, Watson stopped resisting the detective and his partner and stopped reaching for the hammer at the side of the couch. Watson told them, "You guys didn't have to fight me like that. . . . I wasn't trying to get a weapon. I was trying to get pepper spray."

Watson was arrested and indicted on two counts of felony obstruction of a law enforcement officer. The indictment alleged that on May 4, 2012, Watson had knowingly and willfully obstructed the detective and his partner, who were acting in the lawful discharge of their official duties, by "offering violence" to their persons "by grabbing a can of pepper spray, raising it toward [them], and reaching toward another weapon."[1]

At the ensuing jury trial, the detective and his partner testified to the events as set forth above, while Watson testified to a different version of events. Watson denied having ever spoken with the detective on a previous occasion in April 2012, and he denied knowing that the two men who entered his apartment were law enforcement officers, claiming that medication that he had taken had made him "real groggy and disoriented." Watson also denied lunging at or grabbing the pepper spray or reaching

---

[1] As we have explained,

When an indictment charges a crime was committed in more than one way, proof that it was committed in one of the separate ways or methods alleged in the indictment makes a prima facie case for jury determination as to guilt or innocence. It is sufficient for the State to show that a crime was committed in any one of the separate ways listed in the indictment, even if the indictment uses the conjunctive rather than disjunctive form.

(Footnote omitted.) *Slinkard v. State*, 259 Ga. App. 755, 759-760 (2) (577 SE2d 825) (2003). Hence, the State was authorized to prove felony obstruction by showing that Watson was "offering violence" in any one of the separate ways listed in the indictment, even though the indictment used the conjunctive form. See id.

4

for any weapons by the couch. According to Watson, he had simply "looked over toward" the coffee table where the pepper spray was located, whereupon the detective and his partner grabbed him and jerked him over to the couch. Watson denied attempting to punch or kick the detective or his partner or making any effort to fight them, instead admitting only that he had tried to "brace" himself to keep the weight of the detective and his partner off of him on the couch because he had leg, back, and hip problems.

Watson's girlfriend testified that she began screaming when the detective and his partner forced their way into the apartment to serve the arrest warrant, at which point Watson came back into the living room and "thought [she] was being hurt" because "he didn't know what was going on." According to the girlfriend, Watson was on several medications, including pain pills and sleeping pills, which affected him in the morning hours. She testified that Watson moved toward the pepper spray that was sitting on the coffee table in an effort to defend her from what he mistakenly believed was a home invasion, leading the detective and his partner to intercept Watson before he could reach the pepper spray and to slam him down on the couch. At another point in her testimony, Watson's girlfriend testified that he had simply

5

"look[ed]" in the direction of the pepper spray, and the detective and his partner had "assumed he was going after [it]" and grabbed him and forced him over to the couch.

Watson also sought to introduce evidence that he had previously been assaulted by a third party forcing his way into his residence in an effort to support a defense-of-habitation affirmative defense. The State objected, and the trial court sustained the objection and excluded the evidence on the ground that it was irrelevant.

Additionally, Watson filed a written request to charge on misdemeanor obstruction. The trial court declined to give the charge, concluding that there was no evidence to support it. But the trial court did give several of Watson's requested charges, including a charge on the affirmative defense of mistake of fact.

After hearing the conflicting testimony from the witnesses and the charge of the court, the jury found Watson guilty on both counts of the indictment. Watson filed a motion for new trial, which the trial court denied. This appeal followed.

1. Watson contends that the trial court erred by rejecting his written request for a jury charge on misdemeanor obstruction of a law enforcement officer as a lesser included offense of felony obstruction. We disagree.

Misdemeanor obstruction "requires proof that the defendant knowingly and wilfully obstructed or hindered a law enforcement officer in the lawful discharge of

6

his official duties." *Jones v. State*, 276 Ga. App. 66, 68 (622 SE2d 425) (2005). See OCGA § 16-10-24 (a). To establish that the obstruction was done "knowingly and wilfully," there must be proof that the defendant knew that the person he was obstructing was a law enforcement officer. See *Reddick v. State*, 298 Ga. App. 155, 156-157 (1) (679 SE2d 380) (2009); *Mangum v. State*, 228 Ga. App. 545, 547 (3) (492 SE2d 300) (1997). Felony obstruction has the same elements that must be proven as misdemeanor obstruction, plus one more element – that the defendant obstructed the officer "by offering or doing violence to the person of such officer." OCGA § 16-10-24 (b). See *Jones*, 276 Ga. App. at 68.

As our discussion of the two offenses indicates, misdemeanor obstruction clearly is a lesser included offense of felony obstruction, see *White v. State*, 310 Ga. App. 386, 390 (3) (714 SE2d 31) (2011), and "a written request to charge a lesser included offense must always be given if there is any evidence that the defendant is guilty of the lesser included offense." *State v. Alvarado*, 260 Ga. 563, 564 (397 SE2d 550) (1990). Significantly, however, "[w]here the evidence shows either the completed offense as charged or no offense, such evidence will not support a verdict for one of the lesser grades of the offense, and the court should not charge on the lesser grades of the offense." (Citation and punctuation omitted.) *Strickland v. State*,

223 Ga. App. 772, 777 (1) (479 SE2d 125) (1996). See *Bellamy v. State*, 324 Ga. App. 319, 320 (750 SE2d 395) (2013).

Here, the evidence of record showed that Watson committed either the completed offense of felony obstruction or no offense at all. On the one hand, the testimony of the detective and his partner supported Watson's conviction for felony obstruction as alleged in the indictment. On the other hand, the testimony of Watson and his girlfriend would have authorized the jury to find that Watson did not know that the two men in his apartment were law enforcement officers. The jury also could have found, based on the girlfriend's testimony, that Watson attempted to resist the detective and his partner by lunging toward the pepper spray and struggling with them, but only in a mistaken belief that he needed to defend her from criminal intruders. Alternatively, the jury could have found, based on Watson's testimony and other portions of his girlfriend's testimony, that the detective and his partner assaulted Watson without any basis when he simply "looked over toward" the coffee table where the pepper spray was located, and made no effort to grab the pepper spray or a weapon beside the couch or to otherwise hinder them in their arrest of his girlfriend.

Under the alternative versions of what transpired to which Watson and his girlfriend testified, Watson was guilty of no crime whatsoever. See OCGA § 16-3-5

8

("A person shall not be found guilty of a crime if the act . . . constituting the crime was induced by a misapprehension of fact which, if true, would have justified the act or omission."); *Ewumi v. State*, 315 Ga. App. 656, 663 (1) (a) (727 SE2d 257) (2012) (defendant did not obstruct or hinder the officer's lawful discharge of his duties, where officer had no basis for subduing or detaining the defendant). Accordingly, because the evidence showed that Watson either committed felony obstruction or no offense at all, the trial court did not err in declining to charge on misdemeanor obstruction. See *White*, 310 Ga. App. at 390-391 (3) (no charge on misdemeanor obstruction was warranted, where evidence showed completed offense of felony obstruction or no offense); *Williams v. State*, 301 Ga. App. 731, 733-734 (4) (a) (688 SE2d 650) (2009) (same). See also *Lindsey v. State*, 262 Ga. 665, 666 (2) (b) (424 SE2d 616) (1993) (requested jury charge on reckless conduct not appropriate, where evidence showed either that defendant committed the charged offense of aggravated assault, or that defendant's act was justified and thus constituted no crime at all).

2. Watson also contends that the trial court erred in excluding evidence that he was attacked by a third party during a previous home invasion, which he sought to introduce to support an affirmative defense that he was justified in using force to defend his habitation. Again, we disagree.

"A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to prevent or terminate such other's unlawful entry into or attack upon a habitation." OCGA § 16-3-23. Because justification defenses are predicated on a reasonable person standard rather than the subjective fears of a particular defendant, "we have on numerous occasions found inadmissible to support a justification defense evidence of violent acts or abuse committed against a defendant by someone other than the victim." (Citations and punctuation omitted.) *O'Connell v. State*, 294 Ga. 379, 382 (3) (754 SE2d 29) (2014). See *Harris v. State*, 279 Ga. 304, 308 (3) (c) (612 SE2d 789) (2005); *Bryant v. State*, 271 Ga. 99, 101 (3) (515 SE2d 836) (1999). Consequently, Watson could not support a justification defense with evidence of a prior home invasion by a third party, and we therefore find no abuse of discretion by the trial court in excluding such evidence.

*Judgment affirmed. Boggs and Branch, JJ., concur*.