[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10316

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

SANDRA DENNIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:18-cr-00302-ELR-1

_____

Before WILLIAM PRYOR, Chief Judge, JORDAN, and ANDERSON, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal concerns the notice that a probationer must receive before her probation can be revoked. One of the mandatory conditions of Sandra Dennis's probation for stealing social security funds was that she not commit any new state crimes. A police officer later investigated Dennis for theft of services after he suspected that she took food from a restaurant without paying. During a heated exchange with the officer, Dennis repeatedly disobeyed his commands. Based on this encounter, a probation officer provided written notice that Dennis had committed theft, battery, and felony obstruction. After a hearing, the district court found that Dennis committed misdemeanor obstruction and sentenced her to a term of supervised release. Dennis objected to that sentence on the ground that she had not been given written notice that her probation could be revoked for committing misdemeanor obstruction. Because misdemeanor obstruction is a lesser included offense of felony obstruction, the notice given to Dennis satisfied the requirements of "due process of law." *See* U.S. CONST. amend. V. We affirm.

## I. BACKGROUND

After the United States filed an information against Sandra Dennis alleging one count of theft of government property for knowingly converting to her use $21,433 of social security

payments, *see* 18 U.S.C. § 641, she pleaded guilty. The district court sentenced her to 24 months of probation. The district court also required, as a condition of her probation, that Dennis not commit any state crime.

Shortly before Dennis completed her sentence, her probation officer filed a petition to revoke her probation for violating her "conditions of supervision." The petition alleged that Dennis violated the condition that she not commit any state crime based on an interaction she had with a police officer. It "alleged[] [that Dennis] committed the new crimes of Willful Obstruction of Law Enforcement by Threats or Violence (felony), Simple Battery on a Police Officer (misdemeanor), and Theft of Services (misdemeanor) in Henry County, Georgia." The petition described Dennis's obstructive conduct as follows:

> According to Henry County, Georgia, Police Officer Worrell, officers were called to the Silver Bay Seafood restaurant located in Stockbridge, Georgia, in reference to a theft of services. Officer Worrell determined that Dennis had obtained food from the restaurant without paying for it, and he provided Dennis with multiple opportunities to pay for the food or otherwise make amends with the business. Dennis refused to cooperate and would not follow any of the officer's instructions. Officer Worrell attempted to place Dennis in handcuffs, at which time she attempted to strike Officer Worrell and a physical confrontation ensued. Dennis was eventually subdued and arrested. According to Henry County Sheriff's Office, Dennis posted a

> $5,000.00 property bond and was being released from
> jail as of December 2, 2020.

Based on the petition, the district court ordered the issuance of a warrant to arrest Dennis and ordered Dennis to "show cause why Probation . . . should not be revoked."

The district court later convened a revocation hearing at which the parties gave evidence on the allegations. The government reiterated its allegation that Dennis committed three state crimes: "willful obstruction of law enforcement by threats or violence, felony; simple battery on a police officer, that's a misdemeanor; and theft of services, misdemeanor." The district court asked Dennis if she "ha[d] . . . received a written copy of these alleged violations" and Dennis responded that she had. Dennis also responded that she would be denying the allegations that formed the basis for the alleged violation.

The government called Officer Worrell to testify about the encounter and to explain the video from the body camera he was wearing at the time. Officer Worrell testified that the cashier at the restaurant informed him that, after an order was placed over the phone, a young woman and an older man walked into the restaurant, checked the food, and took the food without paying. Officer Worrell then called the cellphone number used to place the order and spoke with Dennis's husband, who said that he thought his wife had paid for the food. After Officer Worrell spoke with her husband, Dennis told Officer Worrell that they were not going to pay for the food, but that they would return the food instead.

Dennis later arrived at the restaurant. Officer Worrell testified that, after Dennis stated again that she would not pay for the food, he asked Dennis for her driver's license so that he could positively identify her. Despite asking her multiple times, Dennis refused to give Officer Worrell her license. And after Officer Worrell asked Dennis several times to get off her phone, Dennis failed to comply. After Officer Worrell grabbed the phone out of her hand, Dennis "started swinging." The government rested its evidence on Officer Worrell's testimony.

Dennis testified in her own behalf. Dennis admitted that she had in her right hand a cellphone that Officer Worrell "snatched." But she maintained that she did not swing at him. Dennis testified that she raised her hand to put on her glasses, after which Officer Worrell "thr[ew] [her] against the wall." She also testified that she neither hit nor attempted to hit Officer Worrell "at any point." And she asserted that her hand appeared "balled up" to Officer Worrell because she had attempted to put her mask over her face.

Dennis admitted that Officer Worrell "ask[ed] for [her] driver's license" twice. She admitted that she told him "no" because she "need[ed] [her] license to drive home." She acknowledged that Officer Worrell "explain[ed] to [her] that if [she] didn't give him [her] license, . . . [h]e would have to arrest [her]." But Dennis refused to comply. Dennis also admitted that Officer Worrell asked her "repeatedly" to get off the phone when he was attempting to speak with her and she again refused to comply.

During closing arguments, defense counsel argued that Dennis "never did anything that equates to felony obstruction." She maintained that felony obstruction was the charge at issue. And she argued that felony obstruction "requires something more than a misdemeanor obstruction. She is alleged to have committed felony obstruction, and she did not do that."

In response to that argument, the district court asked defense counsel if it was her "position that [Dennis] could not be found to have committed misdemeanor obstruction based on the way that the alleged violation is pled." Defense counsel responded in the affirmative and argued that Dennis was "entitled to written notice of what the allegations are against her." And she argued that there was "no allegation of misdemeanor obstruction," so Dennis could not "be found to have committed that [offense]."

When the government presented its argument, the district court asked two questions related to the obstruction allegation. First, the district court stated that the petition "specifically says felony obstruction," and asked the government whether its "position [was] that the evidence supports felony obstruction." Second, the district court asked the government if the district court could find that Dennis committed misdemeanor obstruction "for not providing the phone and the driver's license," "[e]specially considering that the pleading only says felony obstruction."

The government responded that the evidence supported both felony and misdemeanor obstruction. And the government argued that "the violation is that she committed a new crime," and

"misdemeanor obstruction is a new crime." "So," the government reasoned, if the district court were to find that Dennis committed misdemeanor obstruction, it "c[ould] still revoke her" probation.

On the specific allegations, the district court could not "find that [Dennis] committed theft." And the district court found that there was not enough evidence that Dennis committed battery or felony obstruction. The district court reasoned that, although it found that Officer Worrell's testimony was highly credible and believed Officer Worrell's testimony that Dennis had raised her hand, it could not find from the video whether Dennis's purpose was to pull up her mask or to do violence.

The district court found that Dennis "definitely . . . committed the act of misdemeanor obstruction in not providing [her] license and in refusing to get off the phone." The district court found that Dennis's attitude—that she "d[id] not have to listen to or respect" Officer Worrell—"c[ame] across on th[e] video." The district court rejected defense counsel's argument that Dennis lacked "proper notice just because the petition says felony obstruction." The district court reasoned that "[t]he petition clearly sets forth that the prohibited conduct is committing a new offense," and "the description of felony obstruction is just additional information." The district court concluded that there was no problem with "find[ing] a reduced charge of the felony obstruction in the form of misdemeanor obstruction."

The district court found that Dennis violated her probation, revoked it on the ground that she committed a new offense, and

sentenced her to two years of supervised release. Defense counsel again objected to the finding of misdemeanor obstruction on the ground that Dennis had not been given proper notice of that allegation.

## II. STANDARD OF REVIEW

We review questions of law *de novo. See United States v. Brown*, 364 F.3d 1266, 1268 (11th Cir. 2004).

## III. DISCUSSION

The Fifth Amendment provides that "[n]o person shall be . . . deprived of . . . liberty[] . . . without due process of law." U.S. CONST. amend. V. The revocation of probation is a deprivation of liberty that entitles the probationer to due process. *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). But because the revocation of probation is "not a stage of a criminal prosecution," *id.*, "the full panoply of rights due a defendant" in criminal prosecutions "does not apply to . . . revocations" of probation, *see Morrissey v. Brewer*, 408 U.S. 471, 480 (1972); *Gagnon*, 411 U.S. at 782.

Revocation proceedings are more "flexible" than criminal prosecutions, and it is improper to equate the two. *Morrissey*, 408 U.S. at 489. Although "[p]robationers have an obvious interest in retaining their conditional liberty," courts must "avoid[] the imposition of rigid requirements that would threaten the informal nature of probation revocation proceedings." *See Black v. Romano*, 471 U.S. 606, 611 (1985).

21-10316                Opinion of the Court                9

Because the proceeding involves "the revocation of the conditional liberty created by probation," *id.* at 610, "the question remains what process is due," *Morrissey*, 408 U.S. at 481. Before probation can be revoked, due process entitles the probationer to "written notice of the claimed violations of" probation; disclosure of the evidence against him; the "opportunity to be heard in person and to present witnesses and documentary evidence"; "the right to confront and cross-examine adverse witnesses"; a neutral and detached hearing body; and "a written statement by the factfinders as to the evidence relied on and reasons for revoking []probation." *Gagnon*, 411 U.S. at 786 (quoting *Morrissey*, 408 U.S. at 489). These rights have also been incorporated into the Federal Rules of Criminal Procedure, *see* FED. R. CRIM. P. 32.1(b)(2), and we construe them harmoniously.

At issue here is whether the petition to revoke Dennis's probation constituted "written notice of the claimed violations" of her probation. *Gagnon*, 411 U.S. at 786 (internal quotation marks omitted); *see also* FED. R. CRIM. P. 32.1(b)(2)(A) (requiring "written notice of the alleged violation"). Notice "give[s] the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." *Wolff v. McDonnell*, 418 U.S. 539, 564 (1974). But—consistent with the Supreme Court's admonition against the imposition of rigidity—our predecessor Court has explained that "[a] revocation hearing need not be as rigid or as formal as a criminal trial either with respect to notice or specification of charges." *United States v. Evers*, 534 F.2d 1186, 1188 (5th Cir. 1976).

Dennis argues that the district court "surprised" her by "finding evidence that she had committed *misdemeanor obstruction* and revoking her probation on that basis." Dennis maintains that this finding deprived her of notice and "an opportunity to contest" the finding in violation of the Due Process Clause and Federal Rule of Criminal Procedure 32.1. She argues that the petition adequately notified her only of the allegations that she had committed "felony obstruction, simple battery, and theft." And she asserts that the petition failed to give her "adequate notice of the elements of" misdemeanor obstruction.

We disagree. As the government argues, "Dennis had notice of the state obstruction statute at issue, and in being warned that she was charged with committing the felony-level offense, she received adequate notice to defend against the misdemeanor-level offense." Dennis received all the notice she was due.

Two principles lead us to that conclusion. First, as we have explained, the processes and rights to which one is entitled in revocation proceedings are less rigid and plentiful than the processes and rights to which one is entitled in criminal prosecutions. *See Morrissey*, 408 U.S. at 480, 489; *Gagnon*, 411 U.S. at 782; *Evers*, 534 F.2d at 1188. Second, even the process due to defendants in criminal prosecutions does not require the specific identification of lesser included offenses in charging instruments if the greater offense is adequately identified and explained. *See Nave v. Helms*, 845 F.2d 963, 964 (11th Cir. 1988) ("Regardless of the charge of a criminal indictment, the defendant is generally subject to conviction under

that charge or any lesser included offense."); *see also* FED. R. CRIM. P. 31(c) (providing that "[a] defendant may be found guilty of . . . an offense necessarily included in the offense charged"). It follows from these two principles that requiring such notice in the context of revocation proceedings would require *more* of the government than in criminal prosecutions, which is inconsistent with our obligation to "avoid[] the imposition of rigid requirements that would threaten the informal nature of probation revocation proceedings." *Black*, 471 U.S. at 611.

"The Due Process Clause of the Fifth Amendment . . . included the right generally to enjoy those privileges long recognized at common law." *Ingraham v. Wright*, 430 U.S. 651, 672–73 (1977) (internal quotation marks omitted); *see also* 3 JOSEPH STORY, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES § 1783, at 661 (Bos., Hilliard, Gray, & Co. 1833) (explaining that "this clause in effect affirms the right of trial according to the process and proceedings of the common law"). Because "[t]he language of the Constitution . . . could not be understood without reference to the common law," "it must be interpreted in the light of the common law." *See United States v. Wong Kim Ark*, 169 U.S. 649, 654 (1898). So, when addressing the scope of "due process of law," U.S. CONST. amend. V, we "refer to traditional common-law concepts," "to what has always been the law of the land," *Ingraham*, 430 U.S. at 659–60 (alteration adopted) (internal quotation marks omitted), and "to the decisions in England and in the several states of the Union, whose laws have the same source," *United*

*States v. Sanges*, 144 U.S. 310, 311–12 (1892); *cf. Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 797–99 (2021) (explaining that "[i]n determining whether nominal damages can redress a past injury, [the Court] look[s] to . . . cases at common law . . . both before and after ratification of the Constitution"). And we have explained that "a process of law must be taken to be due process of law, if it can show the sanction of settled usage both in England and in this country." *United States v. Approximately $299,873.70*, 15 F.4th 1332, 1337 (11th Cir. 2021) (alterations adopted) (quoting *Burnham v. Superior Ct. of Cal.*, 495 U.S. 604, 619 (1990) (plurality opinion)); *see also Ingraham*, 430 U.S. at 679 ("[W]here the State has preserved what has always been the law of the land, the case for [additional] administrative safeguards is significantly less compelling." (citation and internal quotation marks omitted)).

It was well-settled at common law that a "jury was permitted to find the defendant guilty of any lesser offense necessarily included in the offense charged." *Beck v. Alabama*, 447 U.S. 625, 633 (1980). In England, a prisoner indicted of burglary could be acquitted of the burglary for a defect in the evidence of a "breaking and entering" and convicted of stealing instead. *See King v. Withal* (1774) 168 Eng. Rep. 146, 146 (rejecting the argument that the jury could not convict a defendant merely of stealing because "there was no separate and distinct count in the indictment . . . for stealing in the dwelling-house" and holding "that the indictment contained every charge that was necessary in an indictment . . . [for] stealing in a dwelling-house"). Likewise, in an indictment charging that a

defendant both authored and published a libel—the conjunction being a "higher breach of the laws" than mere publication—it was "enough to prove publication" alone for a conviction of that lesser "breach of the laws." *See Rex v. Hunt* (1811) 170 Eng. Rep. 1260, 1260 ("If an indictment charges that the defendant did and caused to be done a particular act, it is enough to prove either."). And a defendant indicted of murder could be acquitted of the murder and convicted of manslaughter. *See* 2 WILLIAM HAWKINS, A TREATISE OF THE PLEAS OF THE CROWN ch. XLVII, § 4, at 619–20 (London, C. Roworth, Bell Yard, Temple Bar 8th ed. 1824) ("[W]here the jury find a man not guilty of an indictment . . . of murder, . . . they may, according to the nature of the evidence, find him guilty of manslaughter." (footnote omitted)); 2 MATTHEW HALE, THE HISTORY OF THE PLEAS OF THE CROWN 302 (Phila., Robert H. Small 1st Am. ed. 1847) ("So if a man be indicted of murder . . . the jury may find him guilty of manslaughter."). The distinction between greater and lesser offenses "r[an] through the whole criminal law; and it [was] invariably enough to prove so much of the indictment as [established] that the defendant ha[d] committed a substantive crime therein specified." *Hunt*, 170 Eng. Rep. at 1260.

The doctrine of lesser included offenses obtained in American common law. *See* James A. Shellenberger & James A. Strazzella, *The Lesser Included Offense Doctrine and the Constitution: The Development of Due Process and Double Jeopardy Remedies*, 79 MARQ. L. REV. 1, 103 (1995) (explaining that there was "a continuity of acceptance of the [lesser-included-offense] doctrine

dating from before the adoption of . . . the original Fifth Amendment Due Process Clause"). "It [was] a general rule at common law, where the accusation in the indictment includes an offence of inferiour degree, the jury may discharge the defendant of the higher crime, and convict him of the less atrocious." *State v. Coy*, 2 Aik. 181, 182 (Vt. 1827) (holding that a jury could lawfully acquit a defendant of assault with intent to murder and convict him of "common assault" instead) (internal quotation marks omitted); *see also Stewart v. State*, 5 Ohio 241, 241 (1831) ("That a jury may find a verdict of guilty for part, and acquit for the residue; that where an accusation for a crime of a higher nature includes an offense of a lower degree, the jury may acquit him for the graver offense, and return him guilty of the least atrocious."). "This rule originally developed as an aid to the prosecution in cases in which the proof failed to establish some element of the crime charged." *Beck*, 447 U.S. at 633. And in the United States, prosecutors could secure convictions for misdemeanor offenses that were necessarily included in charged felony offenses. *E.g.*, *Hunter v. Commonwealth*, 79 Pa. 503, 505 (1875); *Coy*, 2 Aik. at 183; *Stewart*, 5 Ohio at 241 ("[T]here is no foundation in this country for the distinction . . . between felonies and misdemeanors; for here, an indictment for the higher offense rather adds to than subtracts from his privileges."); Shellenberger & Strazzella, *supra*, at 107.

In the United States, notice of the greater offense has long sufficed for notice of any lesser included offense. "It is an ancient doctrine of both the common law and of our Constitution that a

defendant cannot be held to answer a charge not contained in the indictment brought against him." *Schmuck v. United States*, 489 U.S. 705, 717 (1989). That doctrine "is based at least in part on the right of the defendant to notice of the charge brought against him." *Id.* at 718. But what is critical for notice in the context of criminal prosecutions is that all the *elements* of the offense of which the defendant was convicted were in the indictment; "this right to notice would be placed in jeopardy" if prosecutors were "able to request an instruction on an offense whose elements were not charged in the indictment." *Id.* There is no notice violation "in those cases where the indictment contains the elements of both offenses" because it "thereby gives notice to the defendant that he may be convicted on either charge." *Id.* And contemporary practice reflects the longstanding tradition of convicting defendants of lesser included offenses not expressly charged. 3 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 515 (4th ed. 2021) ("In applying the [*Schmuck*] elements test, if the court concludes that one offense is a lesser-included offense of the other, then the defendant may be convicted of the lesser-included offense without it being charged."); FED. R. CRIM. P. 31(c) ("A defendant may be found guilty of . . . an offense necessarily included in the offense charged.").

In the light of the long and unbroken history of allowing convictions on lesser included offenses not expressly charged, we conclude that a district court may find that a defendant committed a lesser included offense of a greater offense that was expressly

mentioned in the petition for revocation. The only question remaining is whether misdemeanor obstruction—the offense the district court found that Dennis had committed—is a lesser included offense of felony obstruction—the offense identified in the revocation petition. We conclude that it is.

Under Georgia law, a defendant is guilty of misdemeanor obstruction if he "[1] knowingly and willfully [2] obstruct[ed] . . . [3] any law enforcement officer . . . in the lawful discharge of his or her official duties." GA. CODE. ANN. § 16-10-24(a). By contrast, a defendant is guilty of felony obstruction if he "[1] knowingly and willfully . . . [2] obstruct[ed] . . . [3] any law enforcement officer . . . in the lawful discharge of his or her official duties [4] by offering or doing violence to the person of such officer or legally authorized person." *Id.* § 16-10-24(b). Because "it is impossible to commit" felony obstruction "without also committing" misdemeanor obstruction, *see* 3 WRIGHT ET AL., *supra*, § 515, "misdemeanor obstruction clearly is a lesser included offense of felony obstruction," *Watson v. State*, 763 S.E.2d 122, 125 (Ga. Ct. App. 2014). And Dennis does not contest that conclusion.

It follows that the revocation petition provided "written notice of the claimed violation[] of" Dennis's probation. *See Gagnon*, 411 U.S. at 786 (internal quotation marks omitted). The petition alleged that Dennis violated the mandatory condition that she not commit another state crime because she had committed "Willful Obstruction of Law Enforcement by Threats or Violence." That allegation refers expressly to "willful obstruction of law

enforcement," which is misdemeanor obstruction. *See* Shellenberger & Strazzella, *supra*, at 101 (explaining that the doctrine of lesser included offenses "is shown most clearly when the indictment actually referred to the lesser in describing the greater (*e.g.*, assault with intent to murder or kill or ravish refer[s] to assault)"). In that event, "both the greater and the lesser are stated in the charge and either or both can be found by the [factfinder]." *Id.* The petition further alleged that Dennis had "refused to cooperate and would not follow any of the officer's instructions," which were the facts on which the district court based its finding that Dennis had committed misdemeanor obstruction. Because misdemeanor obstruction is a lesser included offense of felony obstruction, *Watson*, 763 S.E.2d at 125, the inclusion of felony obstruction in the petition "thereby g[ave] notice to the defendant that [s]he may be [found guilty] on either charge," *see Schmuck*, 489 U.S. at 718.

## IV. CONCLUSION

We **AFFIRM** Dennis's sentence of supervised release.