**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 21, 2025**

# In the Court of Appeals of Georgia

A25A0697. HAWKINS v. THE STATE.

DILLARD, Presiding Judge.

Ashley Hawkins appeals her convictions for three misdemeanor counts and one felony count of obstruction of a law-enforcement officer. In doing so, she argues that (1) there was insufficient evidence to support her convictions; (2) she received ineffective assistance of counsel when counsel failed to object to (a) a misleading jury instruction, (b) admission of officer testimony that her failure to produce a driver's license was an "arrestable offense," (c) admission of a video exhibit that violated the best-evidence rule, and (d) admission of an arresting officer's testimony that he received medical treatment at a hospital for an ankle injury after his encounter with her; (3) the trial court erred in admitting video footage into evidence showing her in

jail after her arrest; and (4) the cumulative prejudicial effect of these alleged errors warrants the grant of a new trial. For the following reasons, we affirm.

Viewed in the light most favorable to the jury's guilty verdict,[1] the record shows that on July 11, 2020, Sergeant Willie Brown with the Monroe County Sheriff's Office[2] initiated a traffic stop on I-75 because the driver of the car—later identified as Hawkins's boyfriend, Terrence Taylor—was speeding. Taylor provided Brown with an "identification card," but ultimately, Brown discovered his driver's license had been suspended. Brown then arrested Taylor for driving with a suspended license. There were three other passengers in the car—Hawkins in the front-passenger seat and her two minor children in the backseat. After Taylor's arrest, Hawkins exited the car and walked toward Brown, filming his interaction with Taylor with her cell phone. Brown instructed Hawkins to get back into the car for everyone's safety because the traffic stop occurred on the side of the interstate immediately next to vehicles traveling at a high speed; but initially, she refused to do so.

---

[1] *See, e.g., Roundtree v. State*, 358 Ga. App. 140, 141 (854 SE2d 340) (2021).

[2] All of the law-enforcement officers referenced in this opinion worked for the Monroe County Sheriff's Office at the time of Hawkins's arrest.

Given that he was attempting to detain Taylor, while also dealing with Hawkins's refusal to return to the car, Sergeant Brown called for back-up. And once other law-enforcement officers arrived, Hawkins agreed to get back into the car and then sat in the driver's seat. Brown testified that their protocol for releasing a vehicle under these circumstances is to confirm that a passenger has a valid driver's license. This ensures the passenger has the authority to move the vehicle; and if not, the vehicle must be towed. Brown added that if a passenger cannot produce a driver's license, officers can still determine whether the passenger has a valid license if they are provided with a name and date of birth. But Hawkins refused to produce a valid license *or* give officers the necessary information. If she had done so, she would have been free to leave.[3] Brown then advised Hawkins she was under arrest for refusing to show officers her driver's license or provide them with the requested information. Even so, she flatly refused to exit the vehicle. At this point, Sergeant Jacob Justice—another responding officer—forcibly removed Hawkins from the car. And when he did so, there were "physical altercations" between Justice, Hawkins, and

---

[3] At trial, the prosecutor presented evidence that, at the time of the traffic stop, Hawkins *did* have a valid driver's license.

Sergeant Jacob Robins.[4] According to Justice, during the incident, Hawkins grabbed his head and removed his sunglasses. Justice also had to be treated in a hospital emergency room later because he injured his ankle during the encounter.

When Hawkins eventually exited the car, she grabbed Sergeant Brown's pants and tried to pull him down. Officers then attempted to handcuff Hawkins; and after they finally did, Hawkins "continued physically resisting" them. Indeed, during the struggle, Hawkins bit Sergeant Robbins on his "lower forearm around [his] wrist," either intentionally or as a result of "scuffling with her on the road." Judy Mercer—another investigator—also responded to the scene; and she observed Hawkins "kicking, cussing, fighting, [and] grabbing." At some point, Hawkins "claw[ed]" Mercer's thumb and pulled on her duty belt. This struggle occurred on the driver's side of the car, which was extremely close to interstate traffic.

Once out of the car, Hawkins "refused to walk[,]" going "completely limp," such that she felt like "dead weight." Even so, the responding officers were eventually

---

[4] Justice testified that he was a sergeant at the time of trial, but a corporal when Hawkins was arrested. Similarly, Jacobs testified that he was a sergeant at the time of trial, but an investigator when he encountered Hawkins. While the indictment refers to some of the law-enforcement officers as deputies, we refer to them with the titles they used when they testified at trial.

able to get her into a patrol car; but when they did so, she "actively resist[ed]." She started kicking the window, roof, and door of the car, as well as scratching the window with her handcuffs. Hawkins also kicked the car's "security panel," while spitting on the "plexi-glass." As a result of Hawkins's behavior, the patrol car was damaged. Ultimately, it took "multiple deputies to control [Hawkins]." And when Hawkins eventually arrived at the jail, she continued resisting officers, shouting profanities and racial slurs at them.

Later, Hawkins was charged, via indictment, with four counts of felony obstruction of a law-enforcement officer and one count of interference with government property. Then, following a jury trial, Hawkins was convicted of one felony count of obstruction of a law-enforcement officer and three lesser-included misdemeanor counts of the same offense; but she was acquitted of interfering with government property. Hawkins then filed a motion for a new trial, which the trial court denied after a hearing. This appeal follows.

1. Hawkins first argues the evidence was insufficient to support her convictions for obstruction of a law-enforcement officer. We disagree.

When a criminal conviction is appealed, the evidence "must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence."[5] And importantly, in evaluating the sufficiency of the evidence, we do not "weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[6] The jury's verdict will be upheld, then, so long "as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[7]

Before addressing the merits, a brief word about the presentation of Hawkins's arguments is necessary. In the ten pages of her brief devoted to this claim of error, she makes *numerous* factual allegations but provides only a few discernable record citations. And almost all of the sparse record citations are to video exhibits, generally (such as "State Ex. 6"), without providing a time stamp. This is, of course, not nearly specific enough to aid in our review of the case. Additionally, none of Hawkins's

---

[5] *Hamlette v. State*, 353 Ga. App. 640, 648 (4) (839 SE2d 161) (2020).

[6] *Id.* (punctuation omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[7] *Hamlette*, 353 Ga. App. at 648 (4) (punctuation omitted).

record citations in this section of her brief comply with the rules of this Court.[8] And as we have repeatedly emphasized, it is not the function of this Court to "cull the record on behalf of a party in search of instances of error."[9] To the contrary, the burden is on "the party alleging error to show it affirmatively in the record."[10] As a result, because Hawkins failed to meet this burden, "if we have missed something in the record or misconstrued an argument, the responsibility rests with [Hawkins]."[11]

Turning to the merits, Hawkins was convicted of three misdemeanor counts and one felony count of obstruction of an officer. Under OCGA § 16-10-24 (a), "[m]isdemeanor obstruction requires proof that the defendant knowingly and wilfully obstructed or hindered a law-enforcement officer in the *lawful discharge of his official*

---

[8] *See* Ct. App. R. 25 (d) (2) (providing that reference to electronic records "should be indicated *by the volume number* of the electronic record *and* the *PDF page number* within that volume (Vol. Number – PDF Page Number; for example, V2-46)" (emphasis supplied)).

[9] *Patterson v. State*, 327 Ga. App. 695, 696 (1) (761 SE2d 101) (2014) (punctuation omitted).

[10] *Id.* (punctuation omitted).

[11] *Brittain v. State*, 329 Ga. App. 689, 693 (2) (766 SE2d 106) (2014) (punctuation and footnote omitted).

*duties.*"[12] And felony obstruction has the same elements that must be proven as misdemeanor obstruction, "in addition to one more element—that the defendant obstructed the officer by offering or doing violence to the person of such officer."[13] The requirements for felony obstruction of an officer are codified at OCGA § 16-10-24 (b).[14]

> As to Hawkins's felony conviction, Count Four of the indictment alleged that
>
> on or about the 11th day of July, 2020, in Monroe County, Georgia, [Hawkins] then and there did knowingly and willfully resist, obstruct, and oppose *[Sergeant] Jake Justice*, a law enforcement officer with the Monroe County Sheriff's Office, in the lawful discharge of his official duties by offering and doing violence to said officer by *fighting with him*

---

[12] *Stringer v. State*, 369 Ga. App. 30, 33 (1) (892 SE2d 41) (2023) (punctuation omitted) (emphasis supplied); *accord Watson v. State*, 328 Ga. App. 832, 835 (1) (763 SE2d 122) (2014); *see* OCGA § 16-10-24 (a) ("Except as otherwise provided in subsection (b) of this Code section, a person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties shall be guilty of a misdemeanor.").

[13] *Stringer*, 369 Ga. App. at 33 (1); *accord Watson*, 328 Ga. App. at 835 (1); *see* OCGA § 16-10-24 (b) ("Whoever knowingly and willfully resists, obstructs, or opposes any law enforcement officer . . . in the lawful discharge of his or her official duties by offering or doing violence to the person of such officer or legally authorized person shall be guilty of a felony . . . .").

[14] *See supra* note 13 & accompanying text.

and *grabbing his head* in violation of OCGA § 16-10-24 (b), contrary to the laws of said State . . . .[15]

As to Hawkins's misdemeanor convictions, Counts One through Three of the indictment contain nearly identical language as Count Four, except for detailing the manner in which Hawkins was alleged to have committed obstruction of an officer and identifying the different officers at issue.

In Count One, the indictment alleged that Hawkins committed obstruction "on the 11th day of July, 2020 . . . offering and doing violence to [*Sergeant*] *Willy Brown* . . . by fighting with [him] and *grabbing his pant leg trying to pull him to the ground* . . . ."[16]

Next, Count Two alleged that Hawkins committed obstruction by "offering and doing violence to [*Investigator*] *Yolanda Mercer* by fighting with [her] on the side of the interstate, clawing [her] thumb, and pulling and grabbing [her] duty belt[,] including unlatching the first retainer on [her] duty weapon."[17]

---

[15] (Emphasis supplied).

[16] (Emphasis supplied).

[17] (Emphasis supplied).

Lastly, Count Three of the indictment alleged that Hawkins committed obstruction by "offering and doing violence to [*Sergeant Jacob Roberts*], by biting him and fighting with him . . . ."[18]

On appeal, Hawkins does not address the sufficiency of the evidence to support any of her individual convictions, all of which allege different acts of obstruction committed by Hawkins against different officers. Instead, she contends there was insufficient evidence to support her convictions for obstruction of an officer because her initial arrest was unlawful.[19] And she alleges that because her arrest was unlawful, she did not wilfully obstruct or hinder a law-enforcement officer in *the lawful discharge of his or her official duties*. In fact, she even suggests that it is impossible for a person to commit the offense of obstruction following an unlawful arrest because, under Georgia law, he or she has the right to resist such an arrest.

But even assuming—for the sake of argument—that Hawkins's initial arrest was unlawful, our Supreme Court has held that a defendant's common-law right to

---

[18] (Emphasis supplied).

[19] Although Hawkins was initially arrested for obstruction of an officer by refusing to provide officers with her license or name and date of birth, she was not ultimately charged with obstruction based on that conduct.

"escape an unlawful, warrantless detention" only allows him or her to use "no more than *proportionate* force."[20] And here, aside from officers forcibly removing Hawkins from the car, there was a dearth of evidence that they used *any* force against her except in their defense of *her* violent and dangerous behavior.[21] Moreover, even if the officers were not acting within the lawful discharge of their duties when they initially arrested Hawkins, Sergeant Brown testified that when a driver is arrested, it is "*protocol*" for law-enforcement to confirm a passenger has a valid driver's license so

---

[20] *Glenn v. State*, 310 Ga. 11, 29-30 (1) (c) (849 SE2d 409) (2020) (emphasis supplied); *see Johnson v. State*, 363 Ga. App. 12, 19 (2) (869 SE2d 177) (2022) (["A person's] common-law right to resist an unlawful arrest or detention extends only to a proportionate use of force necessary to resist the force used to arrest or detain a person." (punctuation omitted)). Hawkins relies on *Glenn*—without a pinpoint citation or parenthetical—for the proposition that she "could not have committed the alleged acts of obstruction during the course of her arrest because a person *cannot* commit obstruction by resisting an unlawful arrest." (punctuation omitted) (emphasis supplied)). But *Glenn* does *not* support this argument because that case provides that, even in the case of an unlawful arrest, a defendant commits the offense of obstruction if he or she uses more than proportionate force in doing so. So, it *was* possible for Hawkins to commit obstruction of an officer when, unprovoked, she physically attacked several police officers on the side of a busy interstate when they tried to detain her.

[21] Besides endangering the officers involved, Hawkins's children exited the car—again, immediately adjacent to cars traveling at high rates of speed on the interstate—and cried hysterically for their mother who was being violent with the officers.

the passenger can "move the vehicle[,]" because otherwise, the car must be towed.[22] So, even assuming the officers were not acting within their official duties when they initially arrested Hawkins, they were certainly doing so when they followed this protocol to determine whether they needed to tow Taylor's car.[23]

In sum, our Supreme Court (and this Court) have both held that, when a driver is lawfully arrested,[24] law-enforcement officers are acting within their official duties

---

[22] (Emphasis supplied).

[23] *See McAnnally v. State*, 370 Ga. App. 340, 340, 344 (1) (b) (897 SE2d 497) (2024) (concluding that, following a driver's lawful arrest, "officers were authorized to direct [a passenger] to exit the vehicle so that it could be inventoried and impounded, they were engaged in the lawful discharge of their official duties, and the evidence supported [the passenger's] conviction for obstruction"); *Brown v. State*, 320 Ga. App. 12, 14 (739 SE2d 32) (2013) (rejecting a passenger's argument that law-enforcement officer was not acting within his official duties when he stopped a vehicle because it did not have a license plate, passenger exited the car, refused to follow the officer's instruction to get back in, and as here, "showed aggression"); *Smith v. State*, 294 Ga. App. 761, 763 (669 SE2d 735) (2008) (concluding that an officer was engaged in his lawful duties when, having lawfully removed a driver from the car, the officers "attempted to determine whether her brother [*i.e.*, a passenger] could drive the car home by asking his name and whether he was licensed to drive and when they checked the veracity of the information he gave them"); *see also Holt v. State*, 227 Ga. App. 46, 50 (487 SE2d 629) (1997) ("[T]he United States Supreme Court [has] held that a law[-]enforcement officer may, as a matter of personal safety, order passengers out of a lawfully stopped vehicle.").

[24] Hawkins has never claimed Taylor's arrest was unlawful.

when they try to determine whether a passenger is authorized to drive the car away from the scene or it must be towed.[25] Hawkins has not shown, then, that the evidence was insufficient to support her convictions.

2. Next, Hawkins argues she received ineffective assistance of counsel in several respects. Again, we disagree.

To evaluate Hawkins's claims of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*,[26] which requires her to show that trial counsel's performance was "deficient and that the deficient performance so prejudiced [her] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[27] Significantly, should a defendant "fail to meet [her] burden on one prong of this two-prong test, we need not review the other prong."[28]

---

[25] *See supra* note 23.

[26] 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[27] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001).

[28] *McAllister v. State*, 351 Ga. App. 76, 93 (6) (830 SE2d 443) (2019); *accord Gomez v. State*, 300 Ga. 571, 573 (797 SE2d 478) (2017).

In addition, the criminal defendant "must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct."[29] In fact, the reasonableness of counsel's conduct is "examined from counsel's perspective at the time of trial and under the particular circumstances of the case[.]"[30] And decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if "they were so patently unreasonable that no competent attorney would have followed such a course."[31] Lastly, unless clearly erroneous, this Court will "uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this

---

[29] *Chapman*, 273 Ga. at 350 (2); *see Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

[30] *Lockhart v. State*, 298 Ga. 384, 385 (2) (782 SE2d 245) (2016).

[31] *Id.*

regard are reviewed *de novo*."[32] With these guiding principles in mind, we turn to Hawkins's specific claims of error.

(a) Hawkins first argues that she received ineffective assistance of counsel when counsel did not object to a misleading jury instruction for when a person is required to display her license to a law-enforcement officer.

More precisely, Hawkins argues she was not legally required to "produce her license" because she was not "voluntarily operating a vehicle at the time police asked for [it]." And she further contends the State was required to prove as an element of

---

[32] *Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014). As to each of her ineffective-assistance-of-counsel claims, Hawkins also alleges the trial court committed plain error in not *sua sponte* correcting her alleged errors. And indeed, in the absence of a contemporaneous objection at trial, our review of a claim is limited to plain-error review. *See* OCGA § 17-8-58 (b) ("Failure to object in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties."); *Tucker v. State*, 362 Ga. App. 489, 493 (1) (869 SE2d 142) (2022) (explaining that when a defendant has not timely objected to the evidence [before the trial court], we review for plain error." (punctuation omitted)). But as with an ineffective-assistance claim, under plain-error review, a defendant must establish he or she was prejudiced by the error. *See Hines v. State*, 350 Ga. App. 752, 754 (1) (830 SE2d 380) (2019) ("[Under plain-error review, the defendant bears the burden of persuasion with respect to prejudice, and must affirmatively show that the error probably affected the outcome below." (punctuation omitted)). Significantly, Hawkins does not argue, in substance, that the trial court erred. As a result, we do not address her plain-error arguments separately.

obstruction that she was under lawful arrest at the time she committed the alleged obstruction. But as explained in Division 1 *supra*, after *Taylor* was lawfully arrested, law-enforcement officers were permitted and authorized to request a valid license or Hawkins's name and date of birth to confirm she could legally drive the car or whether they instead needed to tow it. Thus, an objection to this jury instruction would have been meritless, and "trial counsel [does] not perform deficiently by failing to make such an objection."[33]

(b) Hawkins next argues she received ineffective assistance of counsel when counsel failed to object to officer testimony that her refusal to produce a driver's license was an "arrestable offense."

In Division One, we assumed—without deciding—that Hawkins's initial arrest for refusing to produce her license was unlawful, but evidence still supported her convictions for obstruction of a law-enforcement officer because, *after* her arrest, she became violent with the officers in a dangerous area during the execution of their official duties. And her violent behavior was not remotely proportional to the officers'

---

[33] *Thomas v. State*, 354 Ga. App. 815, 821 (2) (a) (841 SE2d 458) (2020). We reiterate, as to all of Hawkins's claims of ineffective assistance of counsel, if a defendant fails to satisfy the deficiency prong of the *Strickland* test, we need not address the prejudice prong. *See supra* note 28 & accompanying text.

attempt to arrest her. So, again, any objection to this testimony would have been meritless, and counsel is not deficient for failing to make it.[34]

(c) Hawkins also claims she received ineffective assistance of counsel when counsel failed to object to the admission of a patrol car's dash-cam footage (*i.e.*, State's Exhibit 2) because it violated the best-evidence rule.

As recently explained by our Supreme Court, "to prove the contents of a writing, recording, or photograph, the original writing, recording, or photograph shall be required."[35] Even so, other evidence of the recording's contents is admissible if

---

[34] *See supra* note 33 & accompanying text.

[35] *Render v. State*, 320 Ga. 890, 898 (3) (912 SE2d 679) (2025); *see* OCGA § 24-10-1002 ("To prove the contents of a writing, recording, or photograph, the original writing, recording, or photograph shall be required."). In support of this claim, Hawkins cites OCGA § 24-10-1003 (2), which provides, "[a] duplicate shall be admissible to the same extent as an original unless . . . circumstance exists where it would be *unfair* to admit the duplicate in lieu of the original." (emphasis supplied). But given our conclusion in footnote 39 *infra* that Hawkins was not prejudiced by her counsel's failure to object to the admission of a copy of the dash-cam footage, we conclude that admission of this evidence was also not unfair to her. *See Anglin v. State,* 302 Ga. 333, 337 (3) (806 SE2d 573) (2017) ("[I]n a criminal trial, inculpatory evidence is inherently prejudicial; it is only when *unfair* prejudice substantially outweighs probative value that the rule permits exclusion." (punctuation omitted)).

"all originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith."[36]

Based on our review of State's Exhibit 2, it appears to be a replica of the original dash-cam video. And as mentioned, Sergeant Brown testified the videotape was not lost until *after* he submitted it into evidence. The jury was entitled to credit this testimony.[37] Further, at the motion-for-new-trial hearing, Hawkins's trial counsel

---

[36] *Render*, 320 Ga. at 898 (3); *see* OCGA § 24-10-1004 (1) ("The original [copy of a recording] shall not be required and other evidence of the contents of a writing, recording, or photograph shall be admissible if . . . all originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith[.]"). Hawkins claims our decision in *Glasper v. State*, 364 Ga. App. 608 (876 SE2d 11) (2022) held that the State cannot present secondary evidence of surveillance footage lost while in police custody. But *Glasper* held no such thing; and in any event, it is distinguishable from this case. Indeed, in *Glasper*, this Court reversed the trial court's admission of a law-enforcement officer's testimony describing surveillance footage he reviewed in lieu of showing the recording. *See Glasper*, 364 Ga. App. at 610. In doing so, we concluded the trial court erred in admitting the testimony, noting that there was no sign the video was lost or destroyed (or otherwise inaccessible); and significantly, the State did not provide a reason for failing to produce the recording. *See id.* Our ruling in *Glasper*, then, was based on the specific facts of that case in which, unlike here, there was no evidence the original recording was unavailable. So, contrary to Hawkins's contention, *Glasper* did not hold that secondary evidence is *never* admissible when it is lost while in police custody.

[37] *See Whitfield v. State*, 370 Ga. App. 720, 723 (1) (899 SE2d 259) (2024) ("[R]esolving evidentiary conflicts and inconsistencies and assessing witness credibility are the province of the fact finder, not the appellate court." (punctuation omitted)).

testified that he considered raising a best-evidence objection to Mercer's recording, but decided against it for strategic reasons. More precisely, counsel testified that he did not raise the objection because doing so might give the jury the impression he was "trying to hide something." But counsel had no strategic reason for failing to raise it in a pre-trial motion in limine.

In any event, because it is undisputed that this video recording was lost *and* Hawkins has not pointed to any evidence suggesting Sergeant Brown or any other officer acted in bad faith in losing it, any objection to the admission of the duplicate recording would have been meritless. And needless to say, an attorney is not deficient for failing to make such an objection.[38] As noted above, if Hawkins fails to satisfy one prong of the *Strickland* test (which he has), we need not address the other prong.[39]

---

[38] *See supra* note 33 & accompanying text.

[39] *See supra* note 28 & accompanying text. Although we need not address the prejudice prong of *Strickland*, Hawkins cannot satisfy it. Indeed, our review of the dash-cam video presented at trial (*i.e.*, State's Exhibit 2) appears to be a complete and accurate video recording of the traffic stop described at trial. And in fact, Sergeant Brown testified that Investigator Mercer's recording was a "true and accurate copy" of the original dash-cam footage, which he and Mercer viewed before it was lost. Thus, it appears to be unlikely that presenting a copy of the dash-cam footage, rather than the original, would have affected the outcome of Hawkins's trial.

(d) Lastly, Hawkins contends she received ineffective assistance of counsel when counsel failed to object to the admission of Sergeant Justice's testimony that he was treated at the hospital for an ankle injury received during his interaction with Hawkins.

Hawkins has abandoned this claim of error. In the two brief paragraphs she devotes to this claim, she provides three record citations but no legal authority, much less a cognizable legal argument applying such authority to these facts. Under these circumstances, we need not address this allegation of ineffective assistance of counsel.[40]

3. Hawkins also argues the trial court erred in admitting a portion of a video exhibit (*i.e.*, State's Exhibit. 7) because it depicted her being "booked into jail." But she has likewise abandoned this argument.

In her brief, Hawkins summarily claims that State's Exhibit 7—a portion of which depicted her arriving at the jail and continuing to behave in the same belligerent manner she did during the traffic stop—should have been excluded under OCGA §

_____

[40] *See infra* note 44.

24-4-403 ("Rule 403") because it was "more prejudicial than probative."[41] But she does not reference, much less engage in, the specific analysis required by the statute to make this determination.[42] In fact, she does not even quote the text of Rule 403. She also fails to acknowledge that "the exclusion of relevant evidence under OCGA § 24-4-403 is an extraordinary remedy which should be used only sparingly . . . ."[43] or explain why such a remedy is warranted here. And other than a passing reference to Rule 403, Hawkins only quotes a case noting that injection of racial bias or prejudice into criminal proceedings should not be allowed; but she provides no explanation or analysis of how Exhibit 7 violated this principle. In any event, references to the most basic legal authority, without more, are insufficient to set forth a meaningful legal

---

[41] *See* OCGA § 24-4-403 ("Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

[42] *See McAllister*, 351 Ga. App. 81 (1) ("[T]he decision as to whether to exclude such evidence under this provision lies within the discretion of the trial court and calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." (punctuation omitted)).

[43] *Id.* at 82 (1) (punctuation omitted).

argument.[44] Hawkins has abandoned, then, her challenge to the admission of State's Exhibit 7.

4. Lastly, Hawkins claims the cumulative prejudice from the foregoing errors is sufficiently harmful to warrant a new trial. Once again, we disagree.

Our Supreme Court has recently explained that, to establish cumulative error, a defendant must "demonstrate that *at least two* errors were committed in the course of the trial and considered together along with the entire record, the multiple errors so infected the jury's deliberation that they denied the petitioner a fundamentally fair trial."[45] But when reviewing a claim of cumulative prejudice, we evaluate "only the

---

[44] *See In the Interest of K. R.*, 367 Ga. App. 668, 677 (2) (b) (888 SE2d 204) (2023) ("[W]e have held that an argument is abandoned if it provides general citations to the 'most basic legal authority' without providing any legal authority or argument related to the specific facts of her case."); *Gunn v. State*, 342 Ga. App. 615, 623-24 (3) (804 SE2d 118) (2017) (holding that the appellant abandoned two claims of error when, beyond one or two case citations to "the most basic legal authority" as to the purpose of the legal rule at issue and the general standard applicable to claims of ineffective assistance of counsel, the appellant provided no legal authority to support his *specific* contentions as to how and why the trial court committed error, and noting that "mere conclusory statements are not the type of meaningful argument contemplated by our rules" (punctuation omitted)).

[45] *Huff v. State*, 315 Ga. 558, 567-68 (6) (883 SE2d 773) (2023) (punctuation omitted) (emphasis supplied); *accord Wood v. State*, 316 Ga. 811, 821 (5) (890 SE2d 716) (2023).

effects of matters determined to be error, not the cumulative effect of non-errors."[46]

And because Hawkins has not established that a single error occurred at trial, there can be no cumulative effect of the alleged errors.[47]

For all these reasons, we affirm Hawkins's convictions.

*Judgment affirmed. Mercier, J., and Senior Judge C. Andrew Fuller concur.*

---

[46] *Flood v. State*, 311 Ga. 800, 808-09 (2) (d) (860 SE2d 731) (2021) (punctuation omitted).

[47] *See Jackson v. State*, 317 Ga. 95, 107 (4) (891 SE2d 866) (2023) (holding that, even if the two alleged errors could be aggregated for cumulative-error review, the defendant failed to show that the combined prejudicial effect of these errors required a new trial); *Huff*, 315 Ga. at 568 (6) ("Appellant's [cumulative-error] claim fails because Appellant has not demonstrated that the prejudicial effect of the assumed trial[-]court errors and ineffective assistance denied him a fundamentally fair trial, given the strong evidence against him . . . .").